**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>C.T.W. REALTY CORP.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 19-11425 (MKV)<br><br>Hearing Date: TBD |

**DECLARATION OF GREGORY A. GILFOIL**

GREGORY A. GILFOIL, of full age, declares as follows:

1. I am a citizen of the State of New Jersey and am the receiver appointed by the Supreme Court of New York, New York County (the "State Court") for the real property located at 55-59 Chrystie Street, New York, New York (the "Mortgaged Property"). The Property is owned by the debtor C.T.W. Realty Corp. ("CTW" or the "Debtor").

2. I submit this declaration in support of the motion (the "Motion") by the holder of the first mortgage on the Property, Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Holder" or "Secured Creditor") for entry of an Order excusing compliance by me as appointed receiver (the "Receiver") for the Mortgaged Property by order of the State Court dated October 24, 2018 and entered on the State Court's docket on October 25, 2018 (the "Receiver Order"), with Section 543 (a), (b) and (c) of the Bankruptcy Code. A true and correct copy of the Receiver Order is attached hereto as Exhibit A.

3. Except where otherwise set forth herein, all facts set forth in this declaration are based upon my personal knowledge or review of relevant documents.

144282552.3

4. Pursuant to the Receiver Order, the State Court appointed me as Receiver for the Mortgaged Property, commonly known as 55-59 Chrystie Street, New York, New York 10002-5042 and further identified as Block 303 Lot 27 in the Borough of Manhattan as shown on the City of New York Tax Map, in the County of New York, State of New York.

5. I have served as Receiver for over six months. I am ready, willing and able to continue to serve as Receiver. The actions I have taken as Receiver have improved the management and operation of the Mortgaged Property. In addition, I am ameliorating poor conditions left by the Debtor, including addressing conditions that jeopardize the safety of the building and its tenants and the potential viability of the Mortgaged Property.

6. I am also ensuring that rent collections (to the extent of rental income remaining after the Debtor pre-Receiver Order terminated many leases without obtaining new tenants) are being used to pay Mortgaged Property operating expenses. The rent collections prior to my appointment were depleted substantially by the Debtor's counterintuitive efforts to vacate the property, drive out tenants and cause revenue to plummet.

7. As a result, between the need to address the Mortgaged Property's safety and condition and the depleted rental income, I have required advances from the holder of the first mortgage (the "Holder") to perform my duties as Receiver. During my tenure, the Holder has advanced over $146,000 to the Receiver for necessary expenditures at the Mortgaged Property, since the rental income is insufficient to pay those expenditures. I am confident that the Holder will continue to work with me (including making advances necessary expenditures at the Mortgaged Property that I adequately document) if I am permitted to remain as Receiver for the Mortgaged Property.

8. Following is a list of safety needs and other substantial improvements that I have uncovered and begun to remedy as Receiver. Several of the inactions of the Debtor jeopardize the welfare and safety of the tenants, another reason why my continued retention as Receiver is in the best interest of this bankruptcy estate.

9. During my tenure as Receiver, I have met with numerous potential tenants for the Mortgaged Property. However, the Debtor's principal, Gary Tse ("Tse"), repeatedly interfered with my efforts to obtain a new lease with a major proposed tenant called Lancesoft. Lancesoft was proposing to lease the entire building of the Mortgaged Property (approximately 43,000 square feet). Indeed, Tse himself informed me that he had communicated to Lancesoft not to enter into a lease with the Receiver.

10. I can summarize the condition highlights of my actions as follows:

- FIRE SYSTEM: The Debtor did not install a proper working fire alarm system on the Mortgaged Property. There are no smoke detectors or carbon monoxide detectors in the building, which has a gas furnace. In addition, a proper system would include building-wide intercoms, strobes, emergency lighting and elevator first-floor return capacity, among other features. There is no emergency lighting currently in the building.

- SPRINKLER SYSTEM: It is deficient. The fifth floor sprinkler piping was not connected to the building's water supply. The third floor has no sprinklers in the common areas. System-wide, the sprinkler system had no tamper switches and only one flow switch on the roof. Tamper switches allow shut-off of sections of the sprinkler system to allow shut-down of a single floor so that repairs can be done to one floor without turning off the water to the entire building. Flow switches send signals to the control board to communicate where the sprinkler has been triggered (allowing the fire department to know which floor is the fire site). The Receiver is arranging for a plumber to install the flow switches and for an electrician to connect them to the sprinkler fire alarm system (which is independent of the electronic fire alarm system described in the bullet point above).

- CERTIFICATE OF OCCUPANCY: The Debtor did not obtain one pre-petition.

- APPROVALS: The Debtor has let key ones lapse. See below for further detail.

144282552.3                                          3

- SIDEWALK IN FRONT OF BUILDING OVER VAULT THAT HOUSES MAIN ELECTRIC SUPPLY SYSTEM FOR BUILDING:  It leaks.  This imperils the electric system.

- STRUCTURE:   The Debtor allowed leaks in the sidewalks to fester, resulting in rusting of key support beams in the ceiling of the basement (that support the building).  See below for further detail.

- VACANCY:   There were only five tenants when I was appointed as Receiver.  One left shortly after I became Receiver because of disgust with the conditions left by the Debtor before my appointment. The currently aggregate monthly base rental revenue is $10,013.

- BUILDING CODE VIOLATIONS:  The Debtor incurred a substantial number of them pre-petition.  See below regarding their impact on attempting to revive lapsed approvals.

11.     I can summarize the Mortgaged Property's financial condition highlights as follows.  The Holder has needed to advance over $146,000 (plus tax advances) to date to pay for necessary expenditures for the Mortgaged Property that exceed the depleted rental revenue.  Attached hereto as Exhibit B is a projection prepared by me of financial needs for the Mortgaged Property over the next twelve months that I anticipated if I am to continue as Receiver.  I do not believe that Tse has the resources to fund these himself if the Debtor regains possession of the Mortgaged Property.

12.     <u>Inaction by Debtor</u>.  In performing my duties as Receiver, I retained the services of Municipal Building Consultants, Inc., an expediter who is assisting me as Receiver in dealing with correcting numerous code violations cited by the Department of Buildings ("DOB"), the Environmental Control Board ("ECB") and the New York Fire Department ("NYFD").  A true and correct copy of the expediter's report is attached hereto as Exhibit B-1.

13.     The expediter has informed me that the Debtor appears to have failed to have completed the process of conversion of the Mortgaged Property from factory to office complex.  The Debtor obtained approvals in 2008, but had not as of 2013 completed the process.  By

allowing over five years to have elapsed without completing this process, the Debtor may have jeopardized the continuing viability of the 2008 approvals, which I understand may have lapsed in 2018 as a result of the Debtor's inattention to completing the approval process. And, in connection with this, as noted above, the Debtor has failed to obtain a certificate of occupancy.

14. The expediter informs me that the DOB has not committed to reinstating the prior approvals, particularly if the DOB has to work with Tse. The expediter (based on his prior experience) believes that I as Receiver will be more likely to be able to obtain reinstatement of the approvals. I am preparing a letter of hardship to the DOB to seek reinstatement, but I am concerned that if Tse is put back in control of the process, reinstatement will not occur.

15. Further complicating matters is that the Debtor incurred numerous violations, which likely the DOB will require to be cured as a condition of any reinstatement of approvals. Thus, it is both Tse's track record and his inability to cure the violations that makes approvals reinstatement unlikely if the Debtor recovers possession.

16. In addition, the Debtor prior to my appointment failed to renew a permit for outdoor billboard advertising. That failure resulted in lapse of the permit, which cannot be renewed or reinstated. This resulted in the Receiver losing an outdoor billboard tenant who was otherwise prepared to pay $100,000 per year to rent the advertising space.

17. <u>Construction Consultant Report</u>. As Receiver, I retained a construction consultant to examine the Mortgaged Property's physical condition. I have not yet received a written report from the consultant, but he has communicated to me certain findings, some of which I have been able to confirm by visual inspection.

18. The consultant has reported to me that the sidewalk over the vault leaks, and these leaks have been present since before my appointment as Receiver. As a result of the leaks, rust

has appeared on structural steel beams in the basement, leading to dire concern by the consultant and me that an unsafe condition is present.

19. As I noted above, I am awaiting a more complete report from the consultant. Pending receipt of that report, which I believe will be of benefit to the Court, it is imperative that I be able to continue as Receiver pursuant to the Receiver Order until the Court hears the Motion (which includes the authority to collect rents, manage the Mortgaged Property and exclude the Debtor's principals from interfering with management of the Mortgaged Property). This will best ensure that my efforts to remediate the general fire alarm and sprinkler system deficiencies can continue - and be funded.

20. Otherwise, the Mortgaged Property is at risk of instability in management should there be multiple changes of management in a few days. In addition, the Debtor's past conduct as evidenced by what I found when I became Receiver leads me to conclude that if the Debtor is restored to possession, monies collected by the Debtor will not be used for management and operation of the Mortgaged Property, leaving perilous conditions I have described un-remediated, or perhaps even made worse by the Debtor.

21. Attached hereto as Exhibit C is a true and correct copy of a statement of capital expenditures needs and amount I anticipate between now and March 2020.

22. Attached hereto as Exhibit D is a true and correct copy of the most recent leasing activity report I have received from the leasing broker that I have retained as Receiver.

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

By: /s/ Gregory A. Gilfoil
GREGORY A. GILFOIL

Dated: May 2, 2019
Old Bridge, New Jersey

144282552.3

6