HERRICK, FEINSTEIN LLP
Stephen B. Selbst
Steven B. Smith
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Proposed Counsel for Debtor and Debtor-In-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                          :
                                                :    Chapter 11
C.T.W. REALTY CORP.,                            :    Case No. 19-11425 (MKV)
                                                :
                Debtor.                         :
                                                :
-------------------------------------------------------------x

**RESPONSE OF C.T.W. REALTY CORP. IN RESPECT OF THE MOTION
TO EXCUSE COMPLIANCE BY RECEIVER WITH 11 U.S.C. § 543**

C.T.W. Realty Corp., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed counsel, Herrick, Feinstein LLP, hereby respectfully submits this response (the "Response") in respect of the *Motion To Excuse Compliance By Receiver With 11 U.S.C. § 543*, and the *Secured Creditor's Brief In Support Of Motion To Excuse Receiver Compliance With Section 543 Of The Bankruptcy Code* attached thereto and in support thereof (the "Secured Creditor's Brief"), filed by Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Wilmington Trust") dated May 6, 2019 [Dkt. No. 5] (together with all exhibits, the "Receiver Motion").

## RESPONSE

1. The Debtor does not oppose the relief requested in the Receiver Motion. The Debtor interposes this Response, however, in order to address the allegations asserted in the Receiver Motion with respect to the conduct of the Debtor, and the Debtor's President, Mr. Gary Tse, in particular, in the months and weeks leading up, and subsequent to, the Chapter 11 Case, and to provide this Court with an accurate description of such conduct. In support of the Response, the Debtor shall rely upon the Declaration of Gary Tse dated May 17, 2019, attached hereto as Exhibit A.

2. Specifically, the allegations asserted in the Receiver Motion include the following:

    a. The Debtor failed to install a proper fire alarm system or sprinkler system to the Property.[1] (*See* Secured Creditor's Brief at p.4)

    b. The Debtor failed to install smoke detectors or carbon monoxide detectors in the building, which has a gas furnace. (*Id.*)

    c. The Debtor neglected a sidewalk leak that has allowed key basement beams to rust. (*See* Secured Creditor's Brief at p.6)

    d. The Debtor caused the accumulation of building code violations. (*See* Secured Creditor's Brief at p.4)

    e. The Debtor failed to obtain a certificate of occupancy or complete the approval process by which the debtor converted the property from factory to office building. (*See* Secured Creditor's Brief at pp.4-5)

    f. The debtor effectively gutted the tenant-based pre-Receiver order (i) by terminating many leases, (ii) obtaining no new leases in the months leading up the entry of the Receiver Order; and (iii) depressing the Property's rental. (*See* Secured Creditor's Brief at p.4)

    g. After issuance of the Receiver Order, the debtor and Mr. Tse interfered with the Receiver's efforts to lease the entire property to a new tenant. (*See* Secured Creditor's Brief at p.5)

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Affidavit of Gary Tse Pursuant To Local Bankruptcy Rule 1007-2* filed on May 15, 2019 [Dkt. No. 11] (the "Tse Affidavit").

2

      h.      The Debtor hosted one-time events to create an atmosphere inconsistent with the professional commercial space that debtor is obligated to operate. (*See* Secured Creditor's Brief at p.5)

3.      Needless to say, many of these allegations are predicated upon an incomplete recitation of the facts and/or are just plain wrong, and are alleged solely to portray the Debtor's principal, Mr. Tse, and the rest of the Debtor's management, in a negative light before this Court. The Debtor stands ready, willing and able, and intends, to work cooperatively with the Receiver to maximize the value of the Debtor's estate, including the Property, for the benefit of all of the Debtor's creditors.

Dated: May 17, 2019
       New York, NY

                              Respectfully submitted,

                              HERRICK, FEINSTEIN LLP

                              By:/s/ Steven B. Smith
                                  Steven B. Smith
                                  Stephen B. Selbst
                                  2 Park Avenue
                                  New York, NY 10016
                                  Telephone: (212) 592-1400
                                  Facsimile: (212) 592-1500

                              *Proposed Counsel for Debtor and Debtor in Possession*

# EXHIBIT A

# DECLARATION OF GARY TSE

HF 12760479v.2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                          :
                                                :    Chapter 11
C.T.W. REALTY CORP.,                            :    Case No. 19-11425 (MKV)
                                                :
                Debtor.                         :
                                                :
-------------------------------------------------------------x

## DECLARATION OF GARY TSE

GARY TSE, of full age, declares as follows:

1. I am a citizen of the State of New Jersey and am the President of C.T.W. Realty Corp. ("CTW"), the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"). As I described in the affidavit I filed pursuant Local Bankruptcy Rule 1007-2 in support of the Debtor's bankruptcy petition [Dkt. No. 11], I have significant experience and expertise in the real estate business.

2. Specifically, I received my M.S. in Real Estate Finance in 1994 from the New York University. My prior real estate related experience includes posts at AIG Corporate Real Estate, Edward S. Gordon, Citigroup Corporate RE, GVA Williams and Cushman & Wakefield, among others. And I have a background in asset management, investment sales, and leasing and development.

3. I respectfully submit this declaration in support of the Debtor's response (the "Debtor's Response") to the *Motion To Excuse Compliance By Receiver With 11 U.S.C. § 543*, and the *Secured Creditor's Brief In Support Of Motion To Excuse Receiver Compliance With Section 543 Of The Bankruptcy Code* attached thereto and in support thereof, filed by Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Wilmington Trust") dated

5

May 6, 2019 [Dkt. No. 5] (together with all exhibits, the "Receiver Motion"). All facts set forth in this declaration are based upon my personal knowledge or review of relevant documents.

4. As noted in the Debtor's Response, the Debtor does not oppose keeping the Receiver in place, and intends to work cooperatively with the Receiver moving forward in order to maximize the value of the Property. However, I am compelled to file this declaration to provide this Court with key facts which were omitted from the Receiver Motion and which will shed light on, and respond to, the allegations asserted in the Receiver Motion, many of which are predicated upon an incomplete recitation of the facts and/or are just plain wrong.

5. **First**, Wilmington Trust asserted that the Debtor failed to install a proper fire alarm system or sprinkler system to the Property. The Property, with its current status in the NYC Department of Buildings (the "NYC DOB"), possesses a wet sprinkler system via a gravity tank. The Debtor installed a live fire alarm pull station and sprinkler water flow alarm which notifies a 24-hour monitoring station – AFA Protective Systems – which notifies the NYC Fire Department.

6. Thus far, the Debtor has not been notified in writing by the Fire Department, the NYC DOB, the sprinkler monitoring company, the Debtor's architects, or the Debtor's lender that the Debtor needs to modify its existing sprinkler systems (*e.g.*, tamper and flow switches), with the exception of smoke detectors (in one particular suite), emergency lighting, intercom or strobes. The elevator currently has an emergency first-floor return function as required by the NYC DOB. The Debtor has not received any notification of the need to modify the elevator system, and the Debtor has complied with all mandatory inspections.

7. The Debtor has invested much in the replacement of the Property's 1880's sprinkler system. While it may be possible for the Debtor's contractor and plumber to have missed a head

or connection pipe, the remainder of the 42,000 square feet is properly equipped with sprinklers and passed prior inspections without any mention of any significant deficiencies or hazards.

8. **Second**, Wilmington Trust asserted that the Debtor failed to install smoke detectors or carbon monoxide detectors in the building, which has a gas furnace. Over the last ten years, the Debtor has systematically removed all gas units, with the exception of two units I am aware of. One unit services the lobby and sits in the light air shaft which does not need a smoke detector or carbon monoxide detector as it is exposed to the open air and the elements. The second unit services a small office. Upon discussion with the Debtor's HVAC contractor, this may be the only suite that may require a smoke or carbon monoxide detector, due to new code requirements. The Debtor has installed twenty-six (26) new efficient, electric units throughout the Property over the last five years.

9. **Third**, Wilmington Trust asserts that the sidewalk in front of the Property has many infiltrations. As with 55-59 Chrystie Street, the Debtor has a fire hydrant, a Con Edison vault adjacent to the other side of our electric panel, and the city's road that abuts to this sidewalk. In the 37 years under our family ownership, the Debtor has had all of those areas leak into the vault.

10. In 2017, the Debtor had a major water leak coming through the area where Con Edison's electrical conduits enter the Property. Significant water flowed into the Property onto our main electrical supply box. The Debtor immediately notified Con Edison and was informed that the necessary repairs were made in the street. Con Edison representatives explained that their street vault overflowed which pushed water through openings and onto the street abutting our sidewalk which caused the leakage. The Debtor has endeavored to cooperate with Con Edison in their on-going supervision of this matter. The Debtor has not received any written request to perform waterproofing, plumbing or structural work by Con Edison.

HF 12760479v.2

11. In 2017, I recognized that the sidewalk had some functional obsolescence and, as a result, the Debtor solicited an estimate to replace the sidewalk which totaled $150,000. With limited capital on hand, and other necessary capital work, the Debtor chose to defer.

12. Regarding the structure of the Property, in February of 2017, the Debtor engaged a structural engineer, Mr. Darius Toraby, who inspected the structural support in the vault, underneath the sidewalk, and determined that no work was necessary. The engineer assessed that the emergency beams installed by the Debtor in 2015 in the northern vault were functionally supporting the sidewalk and no further work was necessary. The Debtor received no violations or written complaints from NYC DOB, Con Edison or from the Debtor's lender upon their numerous inspections before and after closing.

13. **Fourth**, Wilmington Trust asserts that the Debtor caused the accumulation of building code violations. With every violation issued, I can further provide granular detail as to the Debtor's efforts to remedy such violations, and at which point the Debtor was unable to finalize due to capital constraints. The Debtor has been working with its architects, engineers, and contractors in addressing critical concerns such as matters of structural and fire, life and safety.

14. I have been assured by the Debtor's licensed architect, Mr. Chris Teeter, that he would facilitate the opening and closing of any existing or new permits.

15. **Fifth**, Wilmington Trust asserts that the Debtor failed to obtain a certification of occupancy ("CO") or complete the approval process by which the Debtor converted the Property from factory to office building. In January 2017, the Debtor engaged Mr. Teeter to assist the Debtor in obtaining the CO and to manage the process, including inspecting the Property, reviewing all violations, open permits, consult on necessary changes, request and coordinate inspections, remedy all violations and otherwise liaise with the NYC DOB.

HF 12760479v.2

16. The foregoing process has been delayed because:

   a. In addressing one of the existing violations, the Debtor was required to perform a structural review of the Property. The Debtor's structural engineer inspected the building and we discovered issues that required further exploratory work and engineering analysis. This period took many months; and

   b. In the interim, the Debtor determined to invest further resources and time to remove many old layers of flooring, ceilings, walls, plumbing, electrical, sprinkler, and roofing and also replaced heating and air conditioning units that were inefficient. Further, the Debtor installed fiber optics and Wi-Fi throughout the Property, and added a new roof deck.

17. **Sixth**, Wilmington Trust asserted that the Debtor effectively gutted the tenant base prior to the appointment of the Receiver (i) by terminating many leases without Wilmington Trust's consent, (ii) obtaining no new leases in the months leading up to the entry of the Receiver Order; and (iii) depressing the Property's rental. The vacancy of the Property was high because twenty-one (21) tenants chose to depart on their own volition. In addition, the leases of three (3) tenants were not renewed because they were improperly using their office space as storage and logistics for their products *and* they desired to renew their leases at below market rent levels. In fact, pre-Receiver, the Debtor actively marketed and solicited higher rent-paying tenants.

18. **Seventh**, Wilmington Trust asserted that, post-Receiver Order, the Debtor and Mr. Tse repeatedly, purposefully and wrongfully interfered with the Receiver's efforts to lease the entire Property to a new tenant, Lancesoft. I cultivated this prospective tenant for more than a year and brought to the Receiver to consummate. Because Lancesoft was interested in master leasing the entire Property for only a five (5) year lease term, and the Receiver and Wilmington Trust were insisting on a 10-year lease team, the Debtor sought and found a creditworthy, single asset user who offered to lease the entire Property for ten (10) years and requested a tenant option to purchase the Property at $40 million. With a stronger tenant, and an offer which would result in a higher

HF 12760479v.2

net rent value per rentable square foot, the Debtor presented a significant improvement worthy to forgo Lancesoft's offer. Thus, the Debtor employed sound real estate management by adhering to the lender's concerns for a single, creditworthy tenant to lease for ten (10) years.

19. **Finally**, Wilmington Trust hosted one-time events which created an atmosphere inconsistent with the professional commercial space the Debtor is obligated to operate. From a marketing strategy, the Debtor wanted to widen its field of potential tenants and space users. The Debtor targeted tenants that would appreciate our 1880's brewery building and its history and architecture. Not unlike typical leasing campaigns, the Debtor exposed the Property through curated events with screenings from Tribeca Film Festival contestants, Spotify, Atlantic Records, Facebook, Lyft and Summit, which fostered a global community of world-renowned entrepreneurs, academics, and leaders.

20. To build social capital, the Debtor held sponsored events such as winter clothing drives, free yoga for elders, dog adoption and charity events as well as renting spaces to clients who looked to hold private events, pop-ups and corporate experiential marketing, such as Refinery 29, Cholula Hot Sauce and Bobbi Brown.

21. As with many assignments, some of the Debtor's clients requested for privacy, where our security and staff were not allowed on the premises. Nonetheless, the Debtor endeavored to attract professional and profitable assignments and rentals. For example, the last event the Debtor contracted occurred after the Receiver assumed management, and after obtaining the Receiver's consent. It was a full day event which utilized three floors and hosted senior executives at a round table conference to discuss technology growth in global markets. They had a catered lunch and the entire building was monitored by third-party security. The one-day event generated a $46,061 rental fee which the Receiver collected on behalf of the Property. The Debtor

HF 12760479v.2

21. As with many assignments, some of the Debtor's clients requested for privacy, where our security and staff were not allowed on the premises. Nonetheless, the Debtor endeavored to attract professional and profitable assignments and rentals. For example, the last event the Debtor contracted occurred after the Receiver assumed management, and after obtaining the Receiver's consent. It was a full day event which utilized three floors and hosted senior executives at a round table conference to discuss technology growth in global markets. They had a catered lunch and the entire building was monitored by third-party security. The one-day event generated a $46,061 rental fee which the Receiver collected on behalf of the Property. The Debtor will continue to look to present appropriate and, hopefully lucrative, events to the Receiver going forward.

22. I stand ready, willing and able, and intend, to fully cooperate with the Receiver. And, I intend to bring my almost thirty (30) years of real estate related experience and expertise to bear in this Chapter 11 Case in order to maximize the value of the Property, and the Debtor's estate, for the benefit of the Debtor's creditors.

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

Dated: May 17, 2019
New York, NY

By: _____
Gary Tse