# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>C.T.W. REALTY CORP.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 19-11425 (MKV)<br><br>Hearing Date: August 20, 2019, 10:00 a.m. |

## SECURED CREDITOR'S BRIEF IN SUPPORT OF MOTION FOR ORDER TO AUTHORIZE SECURED CREDITOR TO MAKE PROTECTIVE ADVANCES FOR PRE-PETITION AND POST-PETITION EXPENSES

PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036
(212) 262-6902
Email: geisenberg@perkinscoie.com

*Attorneys for Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26*

On the Brief:

    Gary F. Eisenberg

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

CONCLUSION........................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Ames Dep't Stores, Inc.*,
   115 B.R. 34 (Bankr. S.D.N.Y. 1990) ....................................................................................4

*In re Aqua Assoc.*,
   123 B.R. 192 (Bankr. E.D. Pa. 1991) ....................................................................................4

*Bland v. Farmworker Creditors*,
   308 B.R. 109 (S.D. Ga. 2003) ...............................................................................................4

*In re L.A. Dodgers LLC*,
   457 B.R. 308 (Bankr. D. Del. 2011) ..................................................................................3, 4

*In re Carlton*,
   437 B.R. 412 (Bankr. N. D. Ala. 2010) .................................................................................6

**STATUTES AND RULES**

11 U.S.C. § 364 ..............................................................................................................................3

Fed. R. Bankr. P. 4001(c) ..............................................................................................................3

Secured creditor Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Secured Creditor") submits this memorandum of law in support of its unopposed *Motion to Approve Stipulation and Agreed Order* (the "Motion"). Secured Creditor's Motion seeks entry of an order under Fed. R. Bankr. P. 4001 for the making of postpetition protective advances to the appointed receiver for the Mortgaged Property.[1]

## PRELIMINARY STATEMENT

1.  The Debtor filed this chapter 11 case on May 1, 2019 (the "Petition Date"), the day before a scheduled prepetition referee sale of the Mortgaged Property. Prior to Petition Date, the Supreme Court of New York, New York County entered an order appointing a receiver to the Mortgaged Property (the "Receiver Order"). Such receiver (the "Receiver") continues to serve as Receiver pursuant to this Court's order [ECF No. 21] dated June 4, 2019 (the "Section 543 Order").

2.  Pursuant to the Receiver Order, the Secured Creditor is authorized to advance the funds necessary for any expenses or expenditures for the administration of the Mortgaged Property, with such protective advances secured by the lien of the mortgage held by the Secured Creditor as described in the Receiver Order (the "Mortgage"). Such advances are necessary because the Mortgaged Property's depleted tenant base generates insufficient rental revenue to cover operating expenses.

3.  As protective advances continue to be necessary following the Petition Date, the Secured Creditor sought to stipulate with the Debtor to agreed procedures for the authorization of postpetition protective advances by the Secured Creditor to the Receiver and mechanisms for the

---

[1] The Mortgaged Property is commonly known as 55-59 Chrystie Street, New York, New York 10002-5042 and further identified as Block 303 Lot 27 in the Borough of Manhattan as shown on the City of New York Tax Map, in the County of New York, State of New York.

145022613.1

resolution of disputes relating to proposed advances, pursuant to Fed. R. Civ. Bankr. P. 4001(c). The parties reached substantial agreement that Secured Creditor is authorized to advance the funds necessary for any postpetition expenses or expenditures for the administration of the Mortgaged Property, with such postpetition protective advances secured by the Mortgage and allowed at the same priority as the other claims of the Secured Creditor secured by the Mortgage, subject to one item of disagreement. The one point of disagreement is that the Secured Creditor is prepared to make protective advances to pay pre-petition expenses of the Receiver (to avoid service disruptions at the Mortgaged Property). The Debtor is unwilling to agree to such a provision absent order of this Court. Accordingly, the Secured Creditor seeks this Court's entry of such an order.

## STATEMENT OF FACTS

4.  The facts are summarized below and are based on the Declaration of Gregory A. Gilfoil ("Gilfoil Decl.") and Gary F. Eisenberg, Esq. ("Eisenberg Decl."), each dated July 18, 2019.

5.  Since the Petition Date, the Secured Creditor has advanced $39,779.76 in protective advances to the Receiver for post-petition charges necessary for the administration of the Mortgaged Property ("Post-petition Protective Advances"). *See* Gilfoil Decl., ¶ 8. These Post-petition Protective Advances were necessary to (a) ensure continued utility service to the Mortgaged Property; (b) ensure continued insurance coverage on the Mortgaged Property; (c) repair damage to and remove waste from the Mortgaged Property; (d) correct building code violations, including a deficient sprinkler system, in the Mortgaged Property; and (e) pay various Receiver's fees, expenses, and employee tax obligations. *Ibid.* A summary of these advances,

2

along with individual invoice breakdowns of the amounts advanced, are attached as Schedule 1 to the Gilfoil Decl.

6. The Receiver has also requested $65,226.85 in protective advances from the Secured Creditor for charges relating to the administration of the Mortgaged Property that arose prior to the Debtor's May 1, 2019 petition date (the "Pre-Petition Expenses"). Further, the Receiver has requested that the Secured Creditor advance an additional $28,318.15 in Post-Petition Protective Advances to the Receiver for the administration of the Mortgaged Property for the period from May 1, 2019 to May 31, 2019. *Id. at* ¶¶ 5 - 6. These Pre-Petition and Post-petition Protective Advances are necessary to (a) ensure continued utility service to the Mortgaged Property; (b) ensure continued insurance coverage on the Mortgaged Property; (c) maintain existing building systems at the Mortgaged Property, including elevator, sprinkler, and fire alarm systems; (d) provide pest control to and remove waste from the Mortgaged Property; (e) administer rents in the Mortgaged Property, including the removal of a tenant for default; and (f) pay various Receiver's fees and expenses, and employee tax obligations. *Ibid.* A summary of Pre-Petition Expenses and Post-petition Protective Advances, along with individual invoice breakdowns of the amounts advanced, are also attached as Schedule 1 to the Gilfoil Decl.

7. In sum, the Receiver has made $39,779.76 in Post-Petition Protective Advances and is requesting an additional $93,545.00 in Prepetition and Post-petition Protective Advances as outlined above. All protective advances requested were essential for the continued management and operation of the Mortgaged Property. *Id. at* ¶ 7. Absent protective advances, one or more essential service providers may cease providing services to the Mortgaged Property. Indeed, the waste removal vendor has already sent the Receiver notice of service suspension effective July 30, 2019. *Id. at* ¶ 6.

145022613.1

8. The Secured Creditor and the Debtor have strived to negotiate a stipulation to govern the terms and conditions of the Secured Creditor making protective advances. The only substantive issue between them is that counsel for the Debtor is not willing to agree to the Secured Creditor making protective advances for pre-petition expenses incurred by the Receiver. However, should the Court enter the proposed form of order that the Secured Creditor is submitting, the Debtor will not object to the Secured Creditor making a protective advance for pre-petition Receiver expenses. See Eisenberg Decl. ¶4. Otherwise, the Secured Creditor and Debtor are in substantial agreement on the terms and conditions and mechanisms for making protective advances. *Id*. at ¶5 and Exhibit A.

## **ARGUMENT**

9. The Court should authorize the making of the Pre-Petition and Post-Petition Protective Advances on the terms and conditions set forth in the proposed form of order that the Secured Creditor has submitted. The Debtor is agreeable to this relief (subject to the pre-petition expense analysis to follow).

10. Section 364 of the Bankruptcy Code and Fed. R. Bankr. P. 4001(c) authorize a debtor to obtain secured postpetition financing when such financing would not otherwise be available on an unsecured basis or as an administrative expense. 11 U.S.C. § 364(c); Fed. R. Bankr. P. 4001(c). Courts grant debtors considerable deference in acting in accordance with their business judgment in obtaining postpetition secured credit as long as the agreement to obtain such credit does not run afoul of the provisions of and policies underlying the Bankruptcy Code. *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (stating that courts will "almost always" defer to the business judgment of a debtor when selecting a lender);

4

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (stating that a debtor should be permitted to use reasonable business judgment in entering into a financing agreement).

11. In evaluating proposed postpetition financing under section 364(c) of the Bankruptcy Code, courts will consider various factors, including whether:

    a.  unencumbered credit or alternative financing without superpriority status is available to the debtor;

    b.  the credit transactions are necessary to preserve assets of the estate;

    c.  the terms of the credit agreement are fair, reasonable, and adequate;

    d.  the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors; and

    e.  the proposed financing agreement adequately protects prepetition secured creditors.

*See, e.g., In re L.A. Dodgers LLC*, 457 B.R. at 312 (applying the first three factors); *In re Aqua Assoc.*, 123 B.R. 192, 195–96 (Bankr. E.D. Pa. 1991) (applying the first three factors in section 364(c) review); *Bland v. Farmworker Creditors*, 308 B.R. 109, 113–14 (S.D. Ga. 2003) (applying all factors in making a determination under section 364(d)).

12. Here, the proposed form of order does not seek authorization for new post-petition financing, but rather authorization for the Secured Creditor to continue to make post-petition protective advances to the Receiver for the administration of the Mortgaged Property under Fed. R. Bankr. P. 4001(c). As noted above and in the Gilfoil Decl., the Mortgaged Property does not generate sufficient rental revenue to cover operating expenses and daily maintenance. The Debtor has no other source of income, making the continued provision of protective advances necessary for the administration of the estate. Moreover, with vendors giving notice of cessation of provision of services, paying the vendors who by happenstance of

the timing of the petition filing have become creditors because of providing goods and services to the Receiver pre-petition is in the interest of the Debtor's estate.

13. The Secured Creditor does not seek any changes to the terms under which protective advances are made to the Receiver. Rather, the Secured Creditor simply seeks affirmation that, as provided in the Receiver Order, such advances will be secured by the Mortgage at the same priority as the other claims of the Secured Creditor against the Mortgaged Property.

14. The authorization requested to pay the Pre-Petition Expenses is justified. Courts recognize that mortgage provisions authorizing protective advances are enforceable and that advances to pay third party claims are properly secured by the mortgage and bear interest thereunder. See e.g. *In re Carlton*, 437 B.R. 412, 423 (Bankr. N.D. Ala. 2010). There is no basis to deny the Secured Creditor its right to make a protective advance to avoid Mortgaged Property service disruptions or to have that advance secured by the Secured Creditor's mortgage.

15. Accordingly, the Secured Creditor requests the Court enter the proposed form of authorizing the Secured Creditor to make post-petition advances to the Receiver for payment of both pre-petition and post-petition expenses incurred by the Receiver in connection with the administration and maintenance of the Mortgaged Property under Fed. R. Bankr. P. 4001(c).

145022613.1

## **CONCLUSION**

16. For the foregoing reasons, the Secured Creditor respectfully requests that this Court enter the proposed form of order submitted by the Secured Creditor regarding protective advances and grant such other and further relief as is just.

| | |
|---|---|
| Dated: July 18, 2019<br>New York, New York | COUNSEL FOR WILMINGTON TRUST, N.A., AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF LCCM 2017-LC26 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-LC26 |

*/s/ Gary F. Eisenberg*
Gary F. Eisenberg
PERKINS COIE LLP
30 Rockefeller Plaza
22nd Floor
New York, New York 10112
Tel: (212) 262-6900
Fax: (212) 977-1649
geisenberg@perkinscoie.com