HERRICK, FEINSTEIN LLP
Steven B. Smith
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Counsel for Debtor and Debtor-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:                                                          :
                                                                :          Chapter 11
C.T.W. REALTY CORP.,                                            :
                                                                :          Case No. 19-11425 (MKV)
                                         Debtor.                :
                                                                :
-----------------------------------------------------------x

## PLAN OF REORGANIZATION

C.T.W. Realty Corp., the debtor and debtor-in-possession herein (the "Debtor"), hereby proposes the following Plan of Reorganization pursuant to the provisions of title 11 of Chapter 11 of the United States Code. Capitalized terms used herein shall have the meanings set forth in Article 1.A.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

A. **Definitions**. The following terms shall have the respective meanings specified below:

1.1. "*Accepting Class*" means a Class that votes to accept the Plan in accordance with Section 1126 of the Bankruptcy Code.

1.2. "*Administrative Claim Bar Date*" means the first Business Day that is at least thirty (30) days after the earlier of the Closing Date or the Effective Date.

1.3.    "*Administrative Claim*" means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) Fee Claims.

1.4.    "*Allowed*" means, with reference to any Claim, a Claim (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor; (c) as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; *provided*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtor shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.5.    "*Assumed Contract*" has the meaning assigned to such term in Section 7.2 hereof.

1.6.    "*Auction*" means the public auction of the Property held pursuant to the Bid Procedures.

1.7.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101. *Et seq.*, as amended from time to time, as applicable to the Chapter 11 Case.

1.8.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

1.9.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

1.10.    "***Bid Procedures***" means the terms that will govern the Auction and Sale as set forth in Section 4.2(a)(2) hereof.

1.11.    "***Bid Procedures Motion***" shall have the meaning set forth in Section 4.2(a)(1) hereof.

1.12.    "***Broker***" means any duly licensed professional real estate or mortgage broker engaged by the Debtor, and whose retention has been approved by the Bankruptcy Court, which broker shall be the Debtor's exclusive broker.

1.13.    "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are authorized or required to close by law or executive order, or other legal holiday.

1.14.    "***Cash***" means legal tender of the United States of America.

1.15.    "***Causes of Action***" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise

3

of any kind of character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also includes; (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and € any state law fraudulent transfer claim.

1.16.    "***Chapter 11 Case***" means the above-captioned chapter 11 case commenced by the Debtor on the Petition Date in the Bankruptcy Court.

1.17.    "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against the Debtor.

1.18.    "***Class***" means any group of Claims or Interests classified as set forth in Article II of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.19.    "***Closing Date***" means (i) in the event of a Sale or Refinancing, the closing date of such Sale or Refinancing, and (ii) in the event of a Credit Bid for the Property, the closing date of the Credit Bid Agreement.

1.20.    "***Confirmation Date***" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.21.    "*Confirmation Hearing*" means the date on which the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.22.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.23.    "*Credit Bid*" means the rights of Wilmington Trust under Section 363(k) of the Bankruptcy Code to bid all or a portion of its Allowed Class 1 Secured Claim at the Auction to be conducted pursuant to Article IV hereof.

1.24.    "*Credit Bid Agreement*" means the purchase agreement submitted by Wilmington Trust or its designee in connection with any Credit Bid.

1.25.    "*Debtor*" has the meaning set forth in the introductory paragraph of the Plan.

1.26.    "*Debtor's Owner*" means Mr. Gary Tse.

1.27.    "*Disallowed*" means, with respect to any Claim, that such Claim has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.28.    "*Disbursing Agent*" means Herrick, Feinstein LLP or such entity designated by the Debtor to make or facilitate distributions required by the Plan.

1.29.    "*Disclosure Statement*" means the disclosure statement related to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.30.    "*Disputed*" means with respect to a Claim, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined

by a Final Order; *provided*, *however*, that a Disputed Claim shall not include any portion of the Claim that is an Allowed Claim.

1.31.   "*Disputed Claim Reserve*" means one or more reserve accounts to be funded with Cash in accordance with the terms of the Plan, for Disputed Claims.

1.32.   "*Distribution*" means any initial or subsequent payment or transfer made under the Plan.

1.33.   "*Distribution Fund*" means (i) the Sale Proceeds or Refinancing Proceeds, (ii) if applicable, any Cash on hand, and (iii) if applicable, the proceeds of any capital raise or other similar transaction received or closed by the Debtor to fund the Plan.

1.34.   "*Effective Date*" means the first Business Day upon which each of the conditions to the effectiveness of the Plan set forth in Section 11.2 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.35.   "*Estate*" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.36.   "*Executory Contract*" means a contract to which the Debtor is party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.37.   "*Fee Claims*" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331 or 503(b) of the Bankruptcy Code in the Chapter 11 Case.

1.38.   "*Fee Claims Bar Date*" means 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date.

1.39.    "*Final Order*" means a judgment, order, ruling or other decree of the Bankruptcy

Court (or court of competent jurisdiction) entered on the docket of the Chapter 11 Case (or on the

docket of any court of competent jurisdiction) that has not been reversed, vacated or stayed and as

to which (i) the time to appeal, petition for certiorari proceeding or move for a new trial,

reargument or rehearing has expired and as to which no appeal, petition for certiorari proceeding,

or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an

appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order

or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been

affirmed by the highest court to which such order was appealed, or certiorari shall have been denied

or a new trial, reargument or rehearing shall have been denied or resulted in no modification of

such order, and the time to take any further appeal, petition for certiorari or move for a new trial,

reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion

under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the

Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such

order shall not cause such order not to be a Final Order.

1.40.    "*General Unsecured Claim*" means any Claim against the Debtor, that is not (a)

an Administrative Claim, (b) a Fee Claim, (c) a Priority Tax Claim, or (d) a Secured Claim,

*provided*, *however*, that any deficiency claim on account of any under-Secured Claim shall be

treated as a General Unsecured Claim.

1.41.    "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests,

"impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.42.    "*Interest*" means any equity security (as defined in section 101(16) of the

Bankruptcy Code) of the Debtor, including all shares, common stock, preferred stock, or other

instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.43.   "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.44.   "*Obligations*" means the sum of all (a) Administrative Claims, (b) Fee Claims, and (c) Allowed Class 1 Claim.

1.45.   "*Person*" means an individual, corporation limited partnership, limited liability company or other entity.

1.46.   "*Petition Date*" means May 1, 2019, the date the Debtor commenced this Chapter 11 Case.

1.47.   "*Plan*" means this chapter 11 plan, including all appendices, exhibits, schedules and supplements hereto as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.48.   "*Plan Supplement*" means a supplemental appendix to the Plan containing, among other things, form of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court.  The documents comprising the Plan Supplement may be filed on an iterative basis; provided, that all such documents shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to the Plan.  The Debtor shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date, in accordance with Section 9.4 of the Plan.

8

1.49.    "*Priority Claim*" means a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Bankruptcy Code.

1.50.    "*Priority Tax Claim*" means any Secured Claim or General Unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.51.    "*Pro Rata*" means proportionally according to the total amount of Allowed Claims in a Class.

1.52.    "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.53.    "*Property*" means the real property located at 55-59 Chrystie Street, New York, NY 10002 owned by the Debtor.

1.54.    "*Refinancing*" means a refinancing of some or all of the indebtedness secured by the Property, the net proceeds of which shall not be less than the Obligations.

1.55.    "*Refinancing Proceeds*" means the net proceeds payable to the Debtor from the Refinancing.

1.56.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means leaving a Claim Unimpaired under the Plan.

1.57.    "*Released Parties*" has the meaning set forth in Section 8.3 herein.

1.58.    "*Sale*" means the sale of the Property to a Third Party Purchaser.

1.59.    "*Sale Contract*" means a written agreement between the Debtor and a Third Party Purchaser for the sale of the Property that provides for a Cash purchase price.

1.60.    "*Sale Proceeds*" means the net amount payable to the Debtor from a sale of the Property to a Third Party Purchaser.

9

1.61.    "*Professionals*" means those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to Sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code.

1.62.    "*Receiver*" means the appointed receiver for the Property by order of the Supreme Court of New York, New York County dated October 24, 2018 and entered on that court's docket on October 25, 2018.

1.63.    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.64.    "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) agreed to by the holder of such Claim and the Debtor or (ii) determined by a Final order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.65.    "*Third Party Purchaser*" means a party other than Wilmington Trust (or its nominee) who or which is the highest bidder at an Auction conducted pursuant to Section 4.2(a) of the Plan.

1.66.    "*Unimpaired*" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.67.    "***U.S. Trustee***" means the United States Trustee for the Southern District of New York.

1.68.    "***Voting Deadline***" means the date by which all persons or entities entitled to vote on the Plan must vote to accept or reject the Plan.

1.69.    "***Wilmington Trust***" means Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26.

1.70.    "***Wilmington Trust Closing Date***" means, if Wilmington Trust is the successful bidder for the Property at the Auction, the date of closing of such sale to Wilmington Trust.

**B.    <u>Interpretation; Application of Definitions and Rules of Construction</u>.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy

Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    **Controlling Document**.

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan, the Plan shall govern and control.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

2.1.    Classification of Claims.  A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; ***provided***, that a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

2.2.    Summary of Classification.  The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Secured Claim of Wilmington Trust | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claim of Titan Capital | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Interests | Impaired | No (Deemed to Reject) |

2.3.   <u>Administrative Claims</u>.

(a)      A notice setting forth the Administrative Claim Bar Date will be filed on the Bankruptcy Court's docket and served with the notice of the Effective Date.  No other notice of the Administrative Claim Bar Date will be provided.

(b)      All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Fee Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtor by the Administrative Claim Bar Date.  Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court.

(c)      Unless the Debtor objects to a timely filed and properly served Administrative Claim by the applicable objection deadline, or such Administrative Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Claim shall be deemed allowed in the amount requested.  If the Debtor objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount.

(d)      Each holder of an Allowed Administrative Claim (other than holders of Fee Claims or U.S. Trustee Fees) shall be paid in full, in cash, by the Disbursing Agent from the

13

proceeds of the Sale, Refinancing or other transaction (as applicable) on or as soon as reasonably practicable after the later of the Effective Date or the Closing Date, as applicable, and the date on which such Claim becomes an Allowed Administrative Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Claim and the Disbursing Agent or ordered by the Bankruptcy Court.  Holders of Administrative Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

2.4.    <u>U.S. Trustee Fees</u>.  The U.S. Trustee Fees are Unimpaired.  All U.S. Trustee Fees incurred by the U.S. Trustee prior to the Effective Date and not yet paid shall be paid by the Disbursing Agent on the Effective Date in accordance with the applicable schedule for payment of such fees including any interest thereon.  Until the Chapter 11 Case is closed by entry of a final decree of the Bankruptcy Court, the Debtor shall pay all additional U.S. Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees including any interest thereon.

2.5.    <u>Fee Claims</u>.

(a)    All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on the Debtor and Wilmington Trust on or before the Fee Claims Bar Date.

(b)    Any Fee Claim that is not asserted in accordance with this Section 2.5 shall be deemed Disallowed under this Plan and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Fee Claim against any of the Debtor, the Disbursing Agent, or any of their respective assets or property.

14

(c)        Each holder of an Allowed Fee Claim shall be paid in Cash in an amount equal to its Allowed Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

2.6.    <u>Priority Tax Claims</u>.  Except as may be otherwise mutually agreed in writing between the Debtor and any applicable Governmental Units, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent from the proceeds remaining in the Distribution Fund, if any, promptly after the payment in full in Cash of all of the following: (i) Administrative Claims, (ii) Fee Claims, (iii) the Class 1 Claim, and (iv) the Class 2 Claim.

**ARTICLE III**
**TREATMENT OF CLAIMS UNDER THE PLAN**

3.1.    **Class 1**: The Allowed Secured Claim of Wilmington Trust (i) shall, in the event of a Sale, be paid in full in Cash from the Distribution Fund; ***provided, however***, that if the value of the Property is less than the amount of the Allowed Secured Claim of Wilmington Trust, the balance of such Claim which is not secured by the Property shall be treated as a Class 3 General Unsecured Claim, (ii) shall, in the event of a Refinancing, be paid in full in Cash from the Distribution Fund, or (iii) may, at the Debtor's discretion, be Reinstated pursuant to section 1124(2) of the Bankruptcy Code.  Class 1 is Unimpaired, and Wilmington Trust is presumed to accept the Plan and not entitled to vote.

3.2.    **Class 2**:  The Allowed Secured Claim of Titan Capital shall be paid from the remaining proceeds of the Distribution Fund, if any, promptly after the payment in full in Cash of all of the following: (a) Administrative Claims, (b) Fee Claims, and (c) the Class 1 Claim, ***provided, however***, that if the value of the Property is less than the amount of the Allowed Secured Claim of Titan Capital, the balance of such Claim which is not secured by the Property shall be

15

treated as a Class 3 General Unsecured Claim.  Class 2 is Impaired, and Titan Capital is entitled to vote.

3.3.    **Class 3**: Holders of Allowed Class 3 General Unsecured Claims shall be paid a Pro Rata portion of the remaining proceeds of the Distribution Fund, if any, promptly after the payment in full in Cash of all of the following: (a) Administrative Claims, (b) Fee Claims, (c) the Class 1 Claim, (d) the Class 2 Claim, and (e) Priority Tax Claims, with no post-Petition Date interest thereon.  Class 3 is Impaired, and holders of a Class 3 Claim are entitled to vote to accept or reject the Plan.

3.4.    **Class 4**: Allowed Interests shall receive a Pro Rata portion of the remaining proceeds of the Distribution Fund, if any, after the payment of all classified and unclassified Allowed Claims.  Class 4 Interests are Impaired, and holders of a Class 4 Interest are deemed to reject the Plan and not entitled to vote.

## ARTICLE IV
## IMPLEMENTATION OF THE PLAN

4.1.    <u>Plan Funding</u>. The Plan shall be funded with (a) Cash on hand and (b) the net proceeds of (i) a Sale of the Property in accordance with the Bid Procedures, (ii) the Refinancing of the Class 1 Claim and/or the Class 2 Claim or (iii) any other capital raise or other investment in the Debtor approved by the Bankruptcy Court, or any combination of the foregoing.

4.2.    <u>Implementation</u>.

(a)    **<u>Sale of Property</u>**.

(1)    ***The Sale Process***.

(i)    The Debtor, with the assistance of a Broker, shall run a Sale process in accordance with the Bid Procedures pursuant to Bankruptcy Code sections 363 and 1123(a)(5), free and clear of any and all Liens, Claims, and encumbrances (except for Assumed

16

Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law.

(ii)      Within ten (10) Business Days of the date hereof, the Debtor shall file a motion in the Bankruptcy Court seeking the approval of the Bid Procedures (the "Bid Procedures Motion") consistent with the terms of this Plan.

(iii)      Within fourteen (14) Business Days of the date hereof, the Debtor shall file a motion in the Bankruptcy Court seeking to retain a Broker.

(2)      ***Bid Procedures***.

(i)      The Auction. The Debtor shall conduct an Auction of the Property, subject to the Bid Procedures set forth in this Section 4.2, within 120 days of the entry of a Final Order of the Bankruptcy Court granting the Bid Procedures Motion, at the New York City office of Herrick, Feinstein LLP, counsel to the Debtor.

(ii)      The Credit Bid. Wilmington Trust shall be entitled to submit a Credit Bid.

(iii)      Qualified Bidder. Wilmington Trust shall be deemed a qualified bidder at the Auction.

(iv)      Other Bid Procedures.  Other bid procedures, to be negotiated in good faith by and between the Debtor and Wilmington Trust, and to be included in the Bid Procedures Motion, shall include, without limitation, (1) publication notice, (2) actual notice of the Sale, (3) the amount of the good-faith deposit, (4) due diligence, (5) executory contracts and unexpired leases, (6) irrevocability of a bid, (7) qualified bids (other than regarding Wilmington Trust), (8) auction procedures, including, bidding increments and (9) closing the auction.

(v)      Disputes.  Any disputes arising from the Auction, or

17

regarding any of the Bid Procedures, shall be submitted to the Bankruptcy Court.

(3)     *Vesting of Assets*.  Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall vest in the successful purchaser free and clear of all Liens, Claims and encumbrances (other than Assumed Contracts) and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds as of such date.

(4)     *Plan Funding*.  The Distribution Fund shall be funded from the Sale Proceeds.  The Distribution Fund shall be utilized to satisfy payments consistent with the terms of this Plan.

(5)     *Transfer Taxes*.  Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to the sale of the Property to the Successful Purchaser.

(b)     <u>Refinance</u>.  Notwithstanding any of the foregoing, the Debtor shall have the absolute right to (i) satisfy the Allowed Class 1 Claim and/or the Allowed Class 2 Claim

18

through a Refinancing, capital raise or any other means available, at any time up to the Closing of a Sale, and (ii) engage a Broker to assist in such efforts.

(c)  **Reinstatement**.  Notwithstanding any of the foregoing, the Debtor shall have the absolute right to utilize some or all of the proceeds of a Refinancing, capital raise or other transaction, to Reinstate some or all of the Allowed Class 1 Claim and/or the Allowed Class 2 Claim.

4.3.  Wind Down of the Debtor.

(a)  The Debtor shall continue to exist after the Effective Date for the purposes of making Distributions to holders of Allowed Claims and Interests under the Plan, and to take any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind-down its affairs and its Estate, including filing and prosecuting objections to Claims, if any, and if necessary.

(b)  The principal purpose of the Debtor shall be to (i) implement the Plan, including the Sale, the Refinancing and/or the Reinstatement, (ii) if necessary, liquidate, collect and maximize the Cash value of the any remaining assets of the Estate, and (iii) make Distributions on account of Allowed Claims in accordance with the terms of the Plan.

4.4.  Termination of the Receiver and Post-Confirmation Date Management.

(a)  Notwithstanding any order entered by the Bankruptcy Court in the Chapter 11 Case, but subject to subsection (b) in this Section 4.4, on the Confirmation Date, the Receiver shall be terminated, and the Receiver shall have no further duties and responsibilities other than to facilitate the transfer of management of the Debtor to the Debtor's Owner.

(b)  On and after the Confirmation Date, unless a Sale Closing Date shall have occurred, the Debtor's Owner shall take over the management of the Debtor, and the Debtor's

Owner shall not receive any compensation for his management services until such time as all classified and unclassified Claims have been paid to the extent provided for and in accordance with the Plan.

4.5.    <u>U.S. Trustee Fees and Post Confirmation Reports</u>. The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment of all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. Section 3717, on behalf of the Debtor, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

4.6.    <u>Filing of Documents</u>. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

### ARTICLE V
### <u>RESOLUTION OF DISPUTED CLAIMS & RESERVES</u>

5.1.    <u>Objections</u>. The Debtor or any party in interest may file an objection to the allowance of a Claim or Interest with the Bankruptcy Court, in writing, no later than the Confirmation Date.

5.2.    <u>Amendment of Claims</u>. A Claim may not be amended after the Effective Date unless agreed upon in writing by the Debtor and the holder of such Claim, and, in the case of an Allowed Class 1 Claim or Allowed Class 2 Claim, Wilmington Trust and Titan Capital,

respectively, and as approved by the Bankruptcy Court or as otherwise permitted by the

Bankruptcy Code and Bankruptcy Rules.

5.3.   <u>Reserve for Disputed Claims</u>. Notwithstanding anything contained in this Plan to

the contrary, the Debtor shall reserve, on account of each holder of a Disputed Claim, in Cash, the

amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed

Claim on the date of Distribution.  The Cash so reserved for the holder of such Disputed Claim,

shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim.  The

holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the

Allowed Claim, regardless of when Distribution thereon is made to or received by such holder.

### ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

6.1.   <u>Disbursing Agent</u>.  The Disbursing Agent shall distribute all Cash or other property

to be distributed under the Plan.  Pending the final distribution of all sums distributable under the

terms of the Plan, the Disbursing Agent shall have full authority to sign checks on any bank account

of the Debtor to the extent necessary to make any payment or distribution contemplated by the

Plan.

6.2.   <u>Timing of Distributions Under the Plan</u>.  Subject to Sections 6.6 and 6.8 hereof,

any payments, Distributions or other performance to be made pursuant to the Plan on account of

any Disputed Claim shall be deemed to be timely made if made as provided for under this Plan on

the later of the Closing Date or the Effective Date, on or within five days following the later of (i)

the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such

other times provided in the Plan.

6.3.    <u>Method of Payment</u>.   Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank, or wire transfer, if requested.

6.4.    <u>Claims Objection Deadline</u>.  Subject to further extension by the Debtor, objections to the allowance of any Claim may be filed no later than the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

6.5.    <u>Prosecution of Objections</u>.  After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.  The Debtor may comprise any objections to Disputed Claims without further order of the Court.

6.6.    <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Plan.

6.7.    <u>Escrow of Cash Distributions</u>.  On any date that Distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims pursuant to Sections 503 and 507 of the

Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any Disputed cure amount, and (iv) any amount due but not payable on the Closing Date on account of Administrative Claims or Claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

6.8.    <u>Distribution After Allowance</u>.  Subject to Article III hereof, within five (5) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

6.9.    <u>Investment of Segregated Cash</u>. To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; *provided*, *however*, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository.

6.10.    <u>Distribution After Disallowance</u>.  Subject to Section 6.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Estate for distribution pursuant to the terms of this Plan.

6.11.    <u>Delivery of Distributions</u>. Except as provided in Sections 6.12, 6.13 and 6.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made (1) at the addresses set forth on the respective Proofs of Claim or proofs of Interests filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

6.12.    <u>Undeliverable Distributions</u>.

(a)    If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable Distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an unclaimed distribution pursuant to Section 6.13 of the Plan.

(b)    Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section 6.13 of the Plan, within 30 days after the end of each calendar quarter following the Confirmation Date, the Disbursing Agent shall make Distributions of all Cash that has become deliverable during the preceding quarter.  Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

(c)    Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

6.13.   _Unclaimed Distributions_.  Any Cash or other assets to be distributed under the Plan shall revert to the Debtors and distributed in accordance with the terms of this Plan if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article III hereof; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

6.14.   _Estimation of Claims_.  The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.   _Rejection of Executory Contracts and Unexpired Leases_.  On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and

25

Unexpired Lease note previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court, release or other agreement or document entered into in connection with the Plan, or (3) is a D&O policy or an insurance contract.

7.2.    <u>Assumption and Assignments of Executory Contracts and Unexpired Leases</u>.  In the event of a Sale, on the Sale Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party, if any, shall be deemed assumed and assigned to the successful purchaser in accordance with Section 365 of the Bankruptcy Code, (the "<u>Assumed Contracts</u>"), except for those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement, which shall be deemed rejected.

7.3.    <u>Assumption Cure Payments</u>.  In the event of a Sale, except as otherwise agreed to by the Debtor and the successful purchaser, on the Sale Closing Date, the successful purchaser shall cure any and all undisputed defaults under any Assumed Contracts.  Unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (ii) the Sale Closing Date.

7.4.    <u>Rejection Claims</u>. Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as an General Unsecured Claim.

7.5.    <u>Bar to Rejection Claims</u>. A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Sale Closing Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor's Estate, its successors or its properties.

**ARTICLE VIII**
**INJUNCTION AND EXCULPATION**

8.1.    <u>Binding Effect</u>.  On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtor, whether or not such holders accept the Plan.

8.2.    ***Injunction***.  ***Except (i) as otherwise provided under a Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin, with respect to any Claim held against the Debtor's Estate as of the date of entry of the Confirmation Order, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the***

27

*entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Property, or from property of the Estate, any Claim, obligation or debt that was held against the Property or from property of the Estate by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan.  The entry of the Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.  For the avoidance of doubt, this __Section 8.2__ shall not apply to Wilmington Trust in any suit, action, or other proceeding to collect upon any guaranty related to the Property.*

8.3.    __*Exculpation.*__ *Neither the Debtor nor any of its members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "__Released Parties__") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.  Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall (a) effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties,*

*nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any Claim of Wilmington Trust or any of its affiliates, including, without limitation, any Claim arising out of or under any guarantees executed in connection with the Class 1 Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections 8.2 or 8.3 herein enjoin Wilmington Trust from bringing any Claim, suit or action or other proceeding under or arising out of the Guarantees or any environmental law, or (c) limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1.    <u>Orders in Aid of Consummation</u>.  Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2.    <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Debtor and/or the Receiver, where applicable, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and Distributions under the

Plan shall be subject to such withholding and reporting requirements; ***provided***, ***however***, that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

9.3.    <u>Due Authorization by Claim Holders</u>. Each and every holder of a classified and/or unclassified Claim who accepts the Distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the Distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Claim holder under the Plan.

9.4.    <u>Amendments</u>.  The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, and (ii) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, prior to the Effective Date, the Debtor may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

9.5.    <u>Reservation of Rights</u>.  Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may

be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

9.6.    <u>Revocation or Withdrawal of Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor; (ii) prejudice in any manner the rights of the Debtor; or (iii) constitute an admission of any sort by the Debtor.

9.7.    <u>Request for Relief Under Section 1129(b)</u>.  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.8.    <u>Additional Documents</u>.  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, the Plan Supplement.  The Debtor and all holders of Claims receiving Distributions pursuant to the Plan, and all other parties in interest, shall, prepare, execute, and deliver an agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9.9.    <u>Section Headings</u>. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.10.    <u>Computation of Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11.    <u>Successors and Assigns</u>. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12.    <u>Notices</u>. All notices , requests, demands and other communications to be given or made hereunder, to be effective, shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    (a)    if to the Debtor, at Herrick, Feinstein, LLP, 2 Park Avenue, New York, NY 10016, Attention: Steven B. Smith;

    (b)    if to Wilmington Trust, at Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 1036, Attention Gary Eisenberg.

    (c)    if to any Claim holder, at (i) the addresses set forth on the Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

    (d)    if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13.    <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

9.14.   <u>Severability</u>.   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.15.   <u>Business Day</u>.   In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE X**
**<u>RETENTION OF JURISDICTION</u>**

10.1.   <u>Retention of Jurisdiction</u>.   Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Chapter 11 Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)   Ensure that the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)   Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)   Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)   Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)   Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with

33

respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)    Ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

(g)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan;

(j)    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with

34

consummation or enforcement of the Plan, including the Confirmation Order or any other order of the Bankruptcy Court;

(m)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(o)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(p)    To adjudicate any disputes related to the Confirmation Order, the Sale or alternatively, any auction and sale process as well as disputes relating to the Bid Procedures; and

(q)    Enter a Final Order or decree concluding the Chapter 11 Case.

10.2.    <u>Post-Effective Date Jurisdiction</u>.  Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XI
## CONDITIONS TO THE EFFECTIVE DATE

11.1.   <u>Conditions Precedent to Confirmation</u>.  It shall be a condition to Confirmation of

the Plan that the following conditions shall have been satisfied or waived in accordance with the

terms of the Plan:

(a)      The Bankruptcy Court shall have approved the Disclosure Statement in

form and substance acceptable to the Debtor;

11.2.   <u>Conditions Precedent to Effectiveness</u>.  It shall be a condition to the Effective Date

that the following conditions shall have been satisfied or waived in accordance with the terms of

the Plan:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, which

shall grant final approval of the Plan;

(b)      The Confirmation Order shall be in full force and effect and not subject to

any stay, modification or injunction;

(c)      Except to the extent not required under the Confirmation Order or other

order of the Bankruptcy Court, all governmental and material third party approvals and consents,

including Bankruptcy Court approval, necessary in connection with the transactions contemplated

by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in

full force and effect, and all applicable waiting periods shall have expired without any action being

taken or threatened by any competent authority that could restrain, prevent or otherwise impose

materially adverse conditions on such transactions;

(d)      All documents and agreements necessary to implement the Plan, will have

(a) been tendered for delivery and (b) been effected or executed by all entities party thereto, or will

be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth

36

herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(e)    All conditions to the effectiveness of the Sale Contract or Credit Bid Agreement, as applicable, shall have been satisfied.

## ARTICLE XII
## DUTIES AND RIGHTS OF THE DISBURSING AGENT

The Disbursing Agent shall make and effectuate all distributions required under the Plan. All reasonable and documented fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of presentation of invoice.

## ARTICLE XIII
## POST-CONFIRMATION ACTIVITIES OF THE DEBTORS

13.1.    Final Tax Returns.  In the event that the Debtor sells the Property, the Debtor shall cause final tax returns to be filed with New York State Department of Taxation and Finance as well as the Internal Revenue Service and shall file such additional documents as are necessary to cause the formal dissolution of the Debtor with the New York State, Secretary of State.

13.2.    Post-Confirmation Date Fees and Reserve.  The Debtor shall pay all reasonable and documented post-Confirmation Date fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.

XIII.2. <u>Post-Confirmation Date Fees and Reserve</u>.  The Debtor shall pay all reasonable and documented post-Confirmation Date fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.

## ARTICLE XIV
## EVENTS OF DEFAULT

XIV.1. An Event of Default shall occur if (a) the Disbursing Agent shall fail to make any Distribution when due or (b) the Debtor shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor, Disbursing Agent and the Bankruptcy Court.

XIV.2. Following an Event of Default, if such Default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in default, shall have the right to commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment.

Dated: New York, New York
      July 30, 2019

Respectfully submitted,

C.T.W. REALTY CORP.

By: _____
    Gary Tse, Managing Member

HERRICK, FEINSTEIN LLP
*Attorneys for the Debtor*
2 Park Avenue
New York, New York 10016
(212)-592-1400

By: */s/* Steven B. Smith _____
    Steven B. Smith

38