**Hearing Date and Time: September 12, 2019 at 10:00 a.m.**
**Objection Deadline: September 5, 2019 at 4:00 p.m.**

**HERRICK, FEINSTEIN LLP**
Steven B. Smith
Meaghan Millan
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :

In re:                    :    Chapter 11
                :

C.T.W. REALTY CORP.,      :    Case No.: 19-11425 (MKV)
                :

         Debtors.     :
                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON MOTION OF C.T.W. REALTY CORP. FOR ENTRY OF**
**AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF**
**THE DEBTOR'S PROPERTY AND (B) AUTHORIZING THE AUCTION SALE**

    **PLEASE TAKE NOTICE** that a hearing on the Motion of C.T.W. Realty Corp. for

Entry of an Order (A) Approving Bid Procedures for the Sale of the Debtor's Property and (B)

Authorizing the Auction Sale will be held before the Honorable Mary Kay Vyskocil, Bankruptcy

Judge of the United States Bankruptcy Court for the Southern District of New York, at One

Bowling Green, New York, NY 10004, on **September 12, 2019 at 10:00 a.m. (EST)**, or as soon

thereafter as counsel may be heard.

    **PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, if

any, must (i) be in writing, (ii) state with particularity the grounds therefor, (iii) be filed with the

Bankruptcy Court, (iv) comply with applicable law and rules, and (v) be served upon:   (a)

counsel for the Debtor, Herrick, Feinstein LLP, 2 Park Avenue, New York, New York 10016

(Attn: Steven B. Smith), (b) the Office of the United States Trustee for the Southern District of

New York, 201 Varick Street, Suite 1006, New York, NY 10014, (Attn: Benjamin J. Higgins),

(c) counsel for Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LLCM

2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-

LC26, Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 1036, (Attn:

Gary Eisenberg), and (d) all other persons and entities that have filed a Notice of Appearance in

this bankruptcy case, so as to be received no later than **September 5, 2019 at 4:00 p.m.**

(prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that, if no responses or objections to the Motion

are filed by the deadline, the relief sought may be granted without further notice or hearing.

Dated: New York, New York
      August 13, 2019

                  HERRICK, FEINSTEIN LLP
                  *Attorneys for the Debtor*
                  2 Park Avenue
                  New York, New York 10016
                  (212)-592-1400

                  By: */s/* Steven B. Smith
                      Steven B. Smith

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                              :

                                                    :        Chapter 11

C.T.W. REALTY CORP.,                                :

                                                    :        Case No. 19-11425 (MKV)

                        Debtor.                     :

                                                    :

-------------------------------------------------------------x

## MOTION OF C.T.W. REALTY CORP. FOR ENTRY OF AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTOR'S PROPERTY AND (B) AUTHORIZING THE AUCTION SALE

HERRICK, FEINSTEIN LLP
Steven B. Smith
Meaghan Millan
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Counsel for Debtor and Debtor-In-Possession*

# TABLE OF CONTENTS

Page

JURISDICTION AND VENUE ...................................................................................................1

BACKGROUND .........................................................................................................................2

    A.     Pre-Petition Events.............................................................................................2

    B.     The Bankruptcy Filing and Post-Petition Events...........................................3

    C.     The Debtor's Plan ............................................................................................4

RELIEF REQUESTED...............................................................................................................5

MARKETING PROCESS ..........................................................................................................5

PROPOSED BID PROCEDURES .............................................................................................6

BASIS FOR RELIEF .................................................................................................................7

    I.     The Relief Sought in the Bidding Procedures Order is in the Best Interests of the
          Debtor's Estate and Should be Approved......................................................7

    II.    The Property Will Be Sold Free and Clear Of All Liens, Claims and Interests ..............9

    III.   The Successful Bidder Should Be Afforded Protection Under Bankruptcy Code
          Section 363(m).................................................................................................10

CONCLUSION.........................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 995 Fifth Ave. Assocs., L.P.*,
   96 B.R. 24 (Bankr. S.D.N.Y. 1989) ...................................................................7, 8

*Allstate Ins. Co. v. Hughes*,
   174 B.R. 884 (Bankr. S.D.N.Y. 1994) ...................................................................11

*In re Bakalis*,
   220 B.R. 525 (Bankr. E.D.N.Y. 1998) ...................................................................11

*In re BearingPoint, Inc.*,
   No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) ............................................8

*In re Financial News Network, Inc.*,
   126 B.R. 152 (Bankr. S.D.N.Y. 1991) ....................................................................7

*In re Fortunoff Fine Jewelry and Silverware, LLC*,
   No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) ..........................................8

*In re Integrated Resources, Inc.*,
   147 B.R. 650 (Bankr. S.D.N.Y. 1992) .................................................................7, 8

*In re Iridium Operating, LLC*,
   478 F.3d 452 (2d Cir. 2007) ....................................................................................9

*Kabro Assoc. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*,
   111 F.3d 269 (2d Cir. 1997) ..................................................................................11

*In re Metroplex on the Atl., LLC*,
   545 B.R. 786 (Bankr. E.D.N.Y. 2016) ..................................................................10

*Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*,
   930 F.2d 1132 (6th Cir. 1991) ..............................................................................10

*In re Silicon Graphics, Inc.*,
   No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) .............................................8

*In re Stein & Day, Inc.*,
   113 B.R. 157 (Bankr. S.D.N.Y. 1990) ..................................................................11

*In re Steve & Barry's Manhattan LLC*,
   No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) ...........................................8

*In re Thomson McKinnon Sec., Inc.*,
120 B.R. 301 (Bankr. S.D.N.Y. 1990).......................................................................................9

**Statutes and Rules**

11 U.S.C. § 101(51B) ....................................................................................................2, 3

11 U.S.C. § 105................................................................................................................1, 5, 9

11 U.S.C. § 363................................................................................................1, 5, 8, 9, 10, 11

11 U.S.C. § 365................................................................................................................1, 8, 10

11 U.S.C. § 543................................................................................................................3

11 U.S.C. § 1107.............................................................................................................3

11 U.S.C. § 1108.............................................................................................................3

11 U.S.C. § 1124.............................................................................................................5

28 U.S.C. § 157..............................................................................................................1

28 U.S.C. § 1334............................................................................................................1

28 U.S.C. § 1408............................................................................................................1

28 U.S.C. § 1409............................................................................................................1

Fed. R. Bankr. P. 2002....................................................................................................1

Fed. R. Bankr. P. 6004....................................................................................................1, 9

TO:  **THE HONORABLE MARY KAY VYSKOCIL,**
    **UNITED STATES BANKRUPTCY JUDGE:**

C.T.W. Realty Corp, the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its attorneys, respectfully submits this motion (the "Motion"), seeking the entry of order (the "Bid Procedures Order"), a proposed form of which is annexed to this application as **Exhibit A**, authorizing and approving the bid procedures and terms of sale (the "Bid Procedures") for the proposed sale of the Debtor's Property (defined below) as more fully set forth below, and authorizing the Auction[1] pursuant to Sections 105(a), 363(b), (f) and (m), and 365 of title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support thereof, the Debtor respectfully represents and states as follows:

<strong><u>JURISDICTION AND VENUE</u></strong>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures.

## BACKGROUND

A.    **Pre-Petition Events**

5.      The Debtor is a corporation organized under New York law, and is a single asset real estate company, as defined in 11 U.S.C. § 101(51B).  The Property, owned by the Debtor for close to 40 years, is a five-story industrial building erected in the 1880s, originally utilized as a brewery.  The Property possesses approximately 45,000 usable square feet.

6.      In the 1970s, the family of the Debtor's President, Mr. Gary Tse, established its first garment factory in the Property.  When the Debtor acquired the Property in 1982, the Debtor converted the majority of the Property to garment factory use alongside other industrial and non-traditional uses, *e.g.*, work/live artist lofts, art galleries, restaurant equipment manufacturing and warehousing.

7.      In the early 2000s, the Debtor repositioned the Property and leased office and creative lofts.  The Debtor invest significant capital to upgrade the Property's infrastructure and for tenant improvements.

8.      On or about February 10, 2017, Ladder Capital Finance LLC ("Ladder Capital") agreed to make a loan to the Debtor in the amount of $25,125,000.00 (the "Loan") pursuant to the terms of a loan agreement, dated February 10, 2017 (the "Loan Agreement") and evidenced by an Amended, Restated and Consolidated Promissory Note, dated February 10, 2017 (the "Note"). The Loan is secured by an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement, dated February 10, 2017 (the "Mortgage"), which encumbers the Property.

9.      Effective as of March 13, 2017, Ladder Capital assigned the Loan, Note and Mortgage, and other related documents (together, the "Loan Documents"), to Ladder Capital

2

Finance II, LLC, which subsequently assigned the Loan Documents to Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LLCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Wilmington Trust").

10.     On or about December 11, 2017, the Debtor entered into a Mortgage Agreement with Titan Capital ID, LLC ("Titan Capital") pursuant to which Titan Capital agreed to make a mortgage loan to the Debtor in the amount of $3,500,000.  The Loan is secured by a lien on the Property.

11.     On or about June 8, 2018, Wilmington Trust commenced a foreclosure action in response to alleged defaults by the Debtor of the Loan Documents by filing a Summons and Verified Complaint in the Supreme Court of the State of New York, County of New York.  On October 24, 2018, the State Court appointed Gregory A. Gilfoil as receiver of the Property.  A Judgment of Foreclosure and Sale was entered on March 20, 2019 and a foreclosure sale was scheduled to occur on May 2, 2018.

B.     **The Bankruptcy Filing and Post-Petition Events**

12.     On May 1, 2019 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition before this Court (the "Chapter 11 Case") and was continued as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

13.     On May 6, 2019, Wilmington Trust filed a motion seeking the entry of an order excusing the Receiver's compliance with Section 543 of the Bankruptcy Code.  After careful consideration, the Debtor determined that permitting the Receiver to remain in place to manage the Property while the Debtor focused on its efforts to maximize the value of the Property for all creditors was in the best interests of the Debtor's estate.  Thus, the Debtor did not oppose this

3

motion. On June 4, 2019, the Bankruptcy Court entered an order granting this motion and the Receiver has continued to manage the Property post-petition.

14. On May 24, 2019, Wilmington Trust filed its motion seeking to terminate the Debtor's exclusive period within which to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy [Dkt. No. 18]. On August 7, 2019, the Bankruptcy Court conducted a contested hearing with respect to this motion and, after oral argument, the Bankruptcy Court denied the motion.

15. On May 29, 2019, the Debtor filed its schedules of assets and liabilities and statement of financial affairs for the Debtor [Dkt. No. 19] and filed an amended statement of financial affairs on June 13, 2019 [Dkt. No. 26] (collectively, the "Schedules").

16. The Debtor and Wilmington Trust reached an agreement that Wilmington Trust is authorized to advance to the receiver the funds necessary for any postpetition expenses or expenditures for the administration of the Property. On July 18, 2019, Wilmington Trust filed a motion seeking an order to authorize Wilmington Trust to make protective advances for pre- and post-petition expenses [Dkt No. 37]. That motion is scheduled to be heard on August 20, 2019.

17. No official committee of unsecured creditors or examiner has yet been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Case.

C.    **The Debtor's Plan**

18. The Debtor filed its Plan of Reorganization on July 30, 2019 (the "Plan"). The Plan proposes several alternative transactions designed to determine the true value of the Property in order to maximize the value of the Debtor's estate for the benefit of all of its creditors. Specifically, the Plan proposes that the Debtor, with the help of its Brokers (defined below), will have 120 days

4

from the entry of the Bid Procedures Order to market the Property (the "Marketing Period") in order to solicit offers to (i) purchase the Property, (ii) refinance the Debtor's secured debt or (iii) invest in the Property. Upon the conclusion of the Marketing Period, the Debtor will conduct an auction pursuant to the Bid Procedures (the "Auction") in order to identify the highest and best offer to purchase the Property. Thereafter, the Debtor shall consider the results of the Marketing Period and the Auction in order to determine which transaction will maximize the value of the Debtor's estate for all creditors and will decide whether to (i) accept the highest and best purchase price, (ii) refinance the Debtor's secured debt or (iii) use the proceeds from a refinancing or other capital raise to reinstate the Debtor's secured debt pursuant to section 1124 of the Bankruptcy Code.

19.     The Debtor will be filing an application, on or before August 19, 2019, for authority to retain one or more real estate brokers (the "Brokers") to market and solicit offers to purchase the Property as well as offers to refinance the Debtor's secured debt.

## RELIEF REQUESTED

20.     By this Motion, the Debtor seeks entry of the Bid Procedures Order, pursuant to sections 105(a) and 363 of the Bankruptcy Code authorizing it to implement the Bid Procedures, annexed as Exhibit 1 to the Bid Procedures Order, for the possible sale of the Property. The Debtor also seeks the authority to sell the Property to the highest and best bidder, free and clear of all liens, claims and encumbrances.

### Marketing Process

21.     Subject to entry of an order authorizing the retention of the Brokers, the Brokers may commence the marketing process described above for the Property. Accordingly, it is important that the Bid Procedures be approved. The Property shall be offered for sale "as is",

"where is", and free and clear of all liens, claims and encumbrances (other than Assumed Contracts), with any such liens, claims and encumbrances to attach to the proceeds in the order, priority and extent as they existed on the Petition Date.

### Proposed Bid Procedures

22.    To optimally and expeditiously solicit, receive and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures to govern the sale of the Property[2].  The Bid Procedures are designed to encourage all entities to put their best bids forward and enhance the value to the Debtor's estate.  All parties are directed to review the Bid Procedures for their specific terms.

23.    In furtherance of the Bid Procedures Order, the Debtor expects its Brokers will prepare sales and marketing materials for circulation along with the Bid Procedures to potential buyers in order to maximize the value of the Property.  Interested purchasers may be required to enter into confidentiality agreements with the Brokers prior to their being provided with confidential information regarding the Property.

24.    The Bid Procedures set forth the parameters for which the Debtor will consider bids for the purchase of the Property.  Additionally, the Bid Procedures: (a) set a bid deadline; (b) define requirements for qualified bids; and (c) set an auction date.  The Bid Procedures also recognize Wilmington Trust's right to participate in any Auction and to submit a credit bid for the Property.

---

[2] The Debtor shared the proposed Bid Procedures with Wilmington Trust prior to the filing of the Motion.  Wilmington Trust provided the Debtor with preliminary comments, most of which were incorporated in the Bid Procedures. However, several issues with respect to the Bid Procedures remain as of the filing of the Motion.  The Debtor intends to continue negotiating the procedures with Wilmington Trust and anticipates that the parties will reach agreement on the Bid Procedures before the hearing date on the motion.

6

25.     The Plan provides for the sale of the Property contemplated by the Bid Procedures and, upon the selection of a Successful Bidder, at the conclusion of the Auction, the Debtor may present the successful bid(s) to the Court for approval.

## BASIS FOR RELIEF

I.     **The Relief Sought in the Bidding Procedures Order is in the Best Interests of the Debtor's Estate and Should be Approved**

26.     By this motion and the Plan, the Debtor seeks this Court's authorization to sell the Property by public auction sale in accordance with the Bid Procedures.

27.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets by the estate. *See*, e.g., *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (debtor's negotiated bid procedures are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

28.     The goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (citation omitted).

29.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., id.* at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the

disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should]

provide for a fair and efficient resolution of bankrupt estates").

30.    The Debtor believes that the Bid Procedures will promote active bidding and will

elicit the best and highest offer available for the Property.  The Bid Procedures will allow the

Debtor to conduct the sale in a controlled, fair, and open fashion that will encourage participation

by financially capable bidders who will offer the best bids for the Property, and who can

demonstrate the ability to close a transaction. The Debtor believes that the Bid Procedures (i) will

encourage competitive bidding, (ii) are consistent with other procedures previously approved by

this District, and (iii) are appropriate under the relevant standards governing auction proceedings

and bidding incentives in bankruptcy cases. *See Integrated Resources,* 147 B.R. at 659; *995 Fifth*

*Ave. Assocs.,* 96 B.R. at 28; *see e.g., In re BearingPoint, Inc.,* No. 09-10691 (REG) (Bankr.

S.D.N.Y. Apr. 7, 2009) (approving similar bidding procedures); *In re Silicon Graphics, Inc.,* No.

09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009); *In re Steve & Barry's Manhattan LLC,* No. 08-

12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008); *In re Fortunoff Fine Jewelry and Silverware, LLC,*

No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008).

31.    The Debtor expects to request approval of an Auction process that will last 120

days from the entry of the Bid Procedures Order.  The Bid Procedures do not yet provide for the

auction date or bid deadlines, which the Debtor and Wilmington Trust will agree upon prior to the

hearing on this Motion.

32.    Section 363(b) of the Bankruptcy Code governs the sale of assets outside the

ordinary course of business. Section 363(b)(1) provides, in relevant part, that "[t]he [Debtor], after

notice and hearing, my use, sell or lease, other than in the ordinary course of business, property of

the estate. . . ." 11 U.S.C. § 363(b)(1).  The terms of such sale are generally within the sound

8

discretion of the debtor. *See In re Iridium Operating, LLC*, 478 F.3d 452 (2d Cir. 2007) ("In this Circuit, the sale of the asset of the estate under §363(b) is permissible if the 'judge determined [the] §363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing that [there is] a good business reason to grant such an application.'" (citing *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F. 2d 1063, 1071 (2d Cir. 1983)); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

33.     In addition, Section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." 2 COLLIER ON BANKRUPTCY ¶105.01 (Alan N. Resnick and Henry J. Sommer Eds., 16th ed.).

34.     In accordance with Bankruptcy Rule 6004(f)(a), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale which will most often result in a greater number of potential bidders in the shortest amount of time.

35.     Here, sound business reasons exist for the proposed sale, which would result in the sale of substantially all of the Debtor's assets, and a high bid would benefit the Debtor's estate and creditors.

II.     **The Property Will Be Sold Free and Clear Of All Liens, Claims and Interests**

36.     Bankruptcy Code Section 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the property is disputed; or (e) the entity with an interest

in the last asset being sold could be compelled in a legal or equitable proceeding to accept a money

satisfaction of its interest in and to the property. *See* 11 U.S.C. § 363(f).

37.    Since Bankruptcy Code Section 363(f) is drafted in the disjunctive, satisfaction of

any one of its five requirements will suffice to approve the sale of the Property "free and clear" of

liens, claims, encumbrances and interests (other than the Assumed Contracts). *See* 11 U.S.C. §

363(f); *In re Metroplex on the Atl., LLC*, 545 B.R. 786, 792 (Bankr. E.D.N.Y. 2016) ("[t]he

language of this section is disjunctive; thus, only one of the conditions set forth in § 363(f) need

be satisfied in order to sell the property free and clear of claims and interests"); *Mich. Employment

Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th

Cir. 1991) (recognizing that Section 363(f) of the Bankruptcy Code is written in disjunctive, and

holding that Court may approve sale "free and clear" provided that at least one subsection of

Section 363(f) is met).

38.    Here, as reflected in the Bid Procedures, the sale of the Property is being conducted

pursuant to, *inter alia,* Bankruptcy Code Section 363(f), but the sale of the Property will be effected

subject to the Assumed Leases.  All liens will attach to the sale proceeds in the same order and

priority as they existed on the Debtor's Petition Date.

III.    **The Successful Bidder Should Be Afforded Protection Under Bankruptcy Code
       Section 363(m)**

39.    Bankruptcy Code Section 363(m) affords protection to a good faith purchaser in

any interest in property purchased from an estate, whether the sale conducted is later reversed or

modified on appeal.  Specifically, Bankruptcy Code Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchased or leased such property in good faith,
> whether or not such entity knew of the pendency of the appeal,

10

unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m)...provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

40.     The Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor in possession or trustee in order to demonstrate a lack of good faith. *See Kabro Assoc. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

41.     Provided the Debtor elects, in accordance with the Plan, to sell the Property, subject to Court approval, the Property will be sold at a public auction sale. The sale process will be conducted at arm's length through an independent process. As such, the Debtor respectfully submits that the successful bidder should be afforded good faith purchaser status under Bankruptcy Code Section 363(m).

## CONCLUSION

42.     Thus, the Bid Procedures are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances because the Bid Procedures are designed to maximize the value to be received by the Debtor's estate.

43.    The Debtor has served this application on the Office of the United States Trustee, Wilmington Trust, Titan Capital, the holders of twenty largest unsecured claims, and all parties who have filed notices of appearance in this chapter 11 case.  The Debtor respectfully submits that such service be deemed appropriate and sufficient under the circumstances.

44.    No prior application for the relief sought has been made by the Debtor to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Order granting the relief requested herein and such other and further relief as the Court deems just and appropriate.

Dated: August 13, 2019
      New York, New York               Respectfully submitted,

                                              HERRICK, FEINSTEIN LLP

                                              By:/s/ *Steven B. Smith*
                                                  Steven B. Smith
                                                  Meaghan Millan
                                                  2 Park Avenue
                                                  New York, NY 10016
                                                  Tel: (212) 592-1474
                                                  Fax: (212) 545-2345
                                                  ssmith@herrick.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                           :

                                                 :        Chapter 11

C.T.W. REALTY CORP.,                             :

                                                 :        Case No. 19-11425 (MKV)

                          Debtor.                :

                                                 :

-------------------------------------------------------------x

## ORDER (I) APPROVING BID PROCEDURES FOR THE SALE
## OF THE DEBTOR'S PROPERTY AND (II) AUTHORIZING THE AUCTION SALE

Upon the motion (the "Motion")[1] of C.T.W. Realty Corp., the above-captioned debtor (the "Debtor") for the entry of an order (i) approving the Bid Procedures for the sale of the real property located at 55-59 Chrystie Street, New York, NY 10002 (the "Property") and (ii) authorizing the auction sale, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue being proper pursuant to 28 U.S.C. §§1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Debtor having provided adequate and appropriate notice of the Motion; and a hearing on the Motion having been held on September 12, 2019; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

1.      The Motion is granted to the extent provided herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The Bid Procedures attached hereto as **Exhibit 1** are hereby approved and the Debtor is authorized to conduct the auction sale of the Property in accordance with the Bid Procedures.

3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      Notwithstanding Bankruptcy Rule 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

5.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
           September __, 2019

_____
Honorable Mary Kay Vyskocil
United States Bankruptcy Judge

HF 12894976v.1

# EXHIBIT 1

HERRICK, FEINSTEIN LLP
Steven B. Smith
Meaghan Millan
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Counsel for Debtor and Debtor-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re:                                         :
                                               :    Chapter 11
C.T.W. REALTY CORP.,                           :
                                               :    Case No. 19-11425 (MKV)
                          Debtor.              :
                                               :
-------------------------------------------------------------x
```

**BID PROCEDURES**[1]

The following bid procedures and terms of sale (the "Bid Procedures") shall govern the sale auction process for that certain commercial real property located at 55-59 Chrystie Street, New York, New York 10002 (the "Property").

The Sale is being made pursuant to a chapter 11 plan (the "Plan") filed in connection with the Chapter 11 bankruptcy case of C.T.W. Realty Corp. (the "Debtor") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under case number 19-11425 (MKV).  The sale of the Property is being conducted pursuant to, *inter alia*, Bankruptcy Code Sections 363(b), (d), (f), (k) and (m), 365, 1123(a)(5), 1123(b)(4), and 1146(a) and is subject to confirmation of the Plan.  The seller shall be the Debtor.  References to the "Debtor" below shall mean such authorized representative under the Plan or other order of the Bankruptcy Court.

**I.      Qualified Bidder Status**

Any potential individual, partnership or entity that wishes to tender an offer or bid to purchase the Property must demonstrate to the satisfaction of the Debtor that such potential bidder is a "Qualified Bidder."  A Qualified Bidder is a potential bidder who no later than January [\_\_], 2020 (the "Bid Deadline") delivers so as to be actually received (including by email) by: (a) the Debtor's retained real estate broker (the "Broker")**,** (b) counsel to the Debtor, Herrick, Feinstein LLP, 2 Park Avenue, 22nd Floor, New York, New York 10016, Attention: Steven B. Smith, email: ssmith@herrick.com and (c) counsel to Wilmington Trust, N.A., as Trustee for the Benefit of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Wilmington Trust"), Perkins Coie LLP, 1155 Avenue of the Americas, 22nd Floor, New York, New York, 10036, Attention: Gary F. Eisenberg, email: geisenberg@perkinscoie.com the following:

a.      A written and signed irrevocable and binding offer (the "Qualifying Statement") that:

(i)      fully discloses the identity of each person or entity that is bidding for the Property (the "Bidder").  The Bidder must fully disclose all persons or entities that may be participating with the Bidder including the identity of any partner, member, equity holder or financial backer of the Bidder and the terms of any such participation;

(ii)     includes the Bidder's address, e-mail address and telephone number where the Bidder may be contacted along with its counsel's information;

(iii)    states that the Bidder is financially able and interested in acquiring the Property for the cash price of its offer without any contingencies as to financing and/or additional due diligence of any kind whatsoever, except as provided herein;

(iv)     contains a signed acknowledgment that any bid by the Bidder shall not be contingent upon such Bidder obtaining financing;

(v)      contains a signed acknowledgment that the Bidder will be bound by its bid and the representation and statements made in the Qualifying Statement until seven (7) days after the Closing Date (defined herein) or until such bid is rejected in writing by the Debtor, in consultation with Wilmington Trust;

(vi)     is accompanied by a signed confidentially agreement with respect to all aspects of the Sale in a form to be provided by the Debtor or the Broker, which agreement shall be reasonably acceptable to Wilmington Trust;

(vii)    is accompanied by financial information which fairly and reasonably demonstrates the source of the Bidder's ability to close on the purchase of the Property as the case may be in the amount of its bid in the event that the Bidder is accepted by the Debtor as the Successful Bidder (as defined herein), subject to approval of the Bankruptcy Court;

(viii)   is accompanied by evidence that a good faith deposit in the amount of five percent (5%) of its bid in immediately available funds (the "Deposit"), which

2

Deposit shall be made by wire transfer to an attorney escrow account designated by the Debtor pursuant to wire instructions to be provided; and

(ix)     contains other information reasonably requested by the Debtor.

b.     An executed original of these Bid Procedures in which the Bidder agrees and acknowledges that it will be irrevocably bound by each of the terms herein including the following:

(i)     The Bidder expressly acknowledges that it has relied solely on its own independent due diligence, investigation, analysis and valuations of the Property and that it did not rely upon any oral or written statements, representations, warranties, promises or guarantees whatsoever, whether expressed or implied with respect to the Property from the Debtor, Wilmington Trust, their professionals, the Broker, and their agents and/or representatives.

(ii)     The Debtor, its professionals, agents and representatives and the Broker and its agents and representatives, and Wilmington Trust and its professionals, agents and representatives, have not made, and do not make (and no Contract defined below, will contain), any representations as to the physical condition, rents, leases, expenses, zoning, development, operations, value of the land of the Property, if any, or any other matter or thing affecting or related to the Property, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state, city or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation, development or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property, if any, and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.

(iii)     The Bidder expressly acknowledges that any and all of its incurred expenses concerning any due diligence, such as obtaining title reports or environmental

3

inspections, shall be the sole responsibility of the Bidder, and under no circumstances shall the Debtor, its estate, the Broker, Wilmington Trust or their professionals be responsible to pay such expenses.

(iv)     The Bidder expressly acknowledges that the Bidder will be responsible for completion of any required transfer taxes and any ACRIS forms or applicable recording documents, any required New York State real property transfer tax forms, if required, and fees and taxes associated in connection therewith and the transactions hereunder.

(v)      The Bidder expressly acknowledges that **Time Is Of The Essence** with respect to the Bidder's obligation to pay the Deposit (defined herein) and the balance of the purchase price on the Closing Date (defined herein), and that any failure by the Bidder to pay the balance of the purchase price on the Closing Date will result in the Debtor retaining the Deposit as liquidated damages as an asset of the Debtor's estate, and the termination of the Bidder's right to acquire the Property.

(vi)     The Bidder expressly acknowledges that **Time Is Of The Essence** as to the Bidder to perform all of the obligations required on its part in accordance with the Bid Procedures.

(vii)    The Bidder expressly acknowledges that the Debtor, in consultation with Wilmington Trust and subject to Wilmington Trust's consent, not to be unreasonably withheld, may elect to prepare a contract of sale (the "Contract") for the Property. The template form of Contract if prepared will be provided to each Bidder and filed with the Bankruptcy Court, and each Bidder acknowledges that it is encouraged to utilize this template in its submissions of both a redlined and clean copy of their Contract, and that material deviations from the Contract will be a factor in the Debtor's determination (in consultation with Wilmington Trust) of what is the Opening Bid (as defined in Section II below) and the Successful Bid (as defined in Section III(j) below).

(viii)   The Bidder expressly acknowledges that no offer or bid for the Property shall be deemed accepted by, or binding upon, the Debtor's estate unless and until such offer or bid is accepted in writing by the Debtor and approved by Order of the Bankruptcy Court.

(ix)     In the event that the Bidder is selected as the highest and best bid at the Auction, such Bidder expressly acknowledges that it must close on the purchase of the Property on a date (the "Closing Date") which is not later than ten (10) days after the Auction Date or as soon as is reasonably practicable thereafter. The Auction shall be subject to entry of an Order of the Court confirming the sale of the Property to the applicable Successful Bidder (hereinafter defined) (the "Sale Confirmation Order"). The closing shall take place at the office of the Debtor's counsel.

(x)      The Successful Bidder shall be obligated to close on the purchase of the Property and there is no contingency of any kind or nature that will permit the Successful

4

Bidder to avoid its obligations under these Bid Procedures. Anything to the contrary contained in these Bid Procedures notwithstanding, the Debtor, with the prior written consent of Wilmington Trust, which consent shall not be unreasonably withheld, shall have the right to adjourn the Closing Date in order to remedy any defect to title that is not resolved by the order approving the Sale, but nothing herein or any adjournment shall impose on Wilmington Trust any obligation to take any action or make any advance with respect to any effort by the Debtor to remedy any title defect.

(xi)    The Bidder expressly acknowledges and agrees that in the event that another person or entity is selected as the Successful Bidder but fails to timely tender the Deposit or otherwise perform its obligations under these Bid Procedures, the Debtor, with either (i) the prior written consent of Wilmington Trust or (ii) prior order of the Bankruptcy Court (subject to Wilmington Trust's reservation of its rights and any valid objection it may have), may contact the Next Highest Bidder (hereinafter defined) and sell the Property to the Next Highest Bidder without any further notice (other than to Wilmington Trust) or further approval of the Bankruptcy Court (subject to Wilmington Trust's reservation of its rights and any valid objection it may have), without giving credit for the Deposit or Additional Deposit (hereinafter defined) and it shall be forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate in its reasonable business judgment and with either (i) the prior written consent of Wilmington Trust or (ii) prior order of the Bankruptcy Court (subject to Wilmington Trust's reservation of its rights and any valid objection it may have). Thereafter, the Next Highest Bidder shall be deemed for all benefits and obligations to be the Successful Bidder and shall comply with the terms, conditions, and obligations set forth herein and the related documents and order of the Bankruptcy Court.

(xii)    The Bidder expressly acknowledges that the Property is being sold in accordance with the Plan and pursuant to 11 U.S.C. § 363(b), (d), (f), (k) and (m), **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature (other than the Assumed Contracts), with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; and (e) environmental conditions. Notwithstanding the foregoing sentence, the Property shall be sold subject to the terms of the Assumed Leases.

(xiii)    The Bidder acknowledges that its Bid shall include the payment of any and all cure costs as required under section 365 of the Bankruptcy Code in connection with the assumption of any Assumed Contracts that constitute part of the Property subject to the Bid. The Bidder shall deliver information that can be publicly filed and/or

5

disseminated representing that the Bidder has the financial wherewithal to satisfy cure and adequate assurance requirements with respect to the assumption of any Executory Contracts under the Bankruptcy Code.

(xiv)   The Bidder expressly acknowledges and agrees to otherwise be bound by all the terms of the Bid Procedures.

## II.   Opening Bid/Minimum Bid

The Qualified Bidder that, in the Debtor's reasonable business judgment in consultation with Wilmington Trust, has bid the highest and best amount for the purchase of the Property shall be deemed to have submitted the opening bid for the Property at the Auction Sale (the "Opening Bid").

Notwithstanding the foregoing, the Debtor reserves the right to set the Opening Bid to be announced at or prior to the commencement of the Auction (the "Minimum Bid"); *provided,* that such Minimum Bid shall not apply to Wilmington Trust's right to submit a credit bid in any amount that it chooses in its discretion.  The Debtor reserves the right to alter the Minimum Bid after consultation with Wilmington Trust at or prior to the Auction.

## III.   The Auction

In the event that the Debtor receives by the Bid Deadline one or more bids that it deems in its discretion to constitute Qualified Bids, the Debtor, with the assistance of its Broker, shall conduct a public auction (the "Auction") with respect to the Property on January [__], 2020 (the "Auction Date").  The Auction shall take place at the offices of Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016, or such other place and time in New York City as the Debtor shall (after consultation with Wilmington Trust) notify all Qualified Bidders and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Date.  The Auction may be adjourned for up to one week such that it occurs on or before January [23], 2020 with the prior consent of Wilmington Trust, which consent shall not be unreasonably withheld, or order of the Bankruptcy Court.  If, however, no Qualified Bid is received by the Bid Deadline, then the Auction will not be held.  The Auction shall be governed by the following procedures:

a.   Only authorized representatives and respective counsel of each of the Qualified Bidders, the Debtor and Wilmington Trust shall be permitted to attend and participate at the Auction;

b.   Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

c.   At the Auction, Wilmington Trust shall be entitled to credit bid (in one or more bids) up to the amount of its Secured Claim as of the Auction Date;

d.   Each Qualified Bidder shall be required to confirm under oath that it has not engaged in any collusion with respect to the bidding or the Auction;

e.   Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

f.      The Qualified Bidders shall participate in person at the Auction, through a duly authorized representative with authority to bind the entity;

g.      The Auction will be conducted so that each Qualified Bidder will be informed of the previous bid;

h.      The minimum initial overbid at the Auction shall be $50,000;

i.      Qualified Bidders may submit successive bids in increments of at least $50,000;

j.      The Auction shall continue until there is only one offer that the Debtor, in consultation with Wilmington Trust, determines, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Qualified Bidders (the "Successful Bid"). The bidder which submitted such Successful Bid shall become the "Successful Bidder";

k.      At the end of the Auction, the Debtor shall also announce the next highest and otherwise best offer after the Successful Bid (the "Next Highest Bid" and the Qualified Bidder that submitted such bid, the "Next Highest Bidder");

l.      Deposits submitted by the Qualified Bidders who do not become the Successful Bidder shall be returned by the Debtor within four (4) business days after (i) the Auction is consummated with the Successful Bidder or (ii) the Debtor has determined not to sell the Property;

m.      The Successful Bidder shall within three (3) business days after the Auction increase the Deposit as necessary to an amount equal to five percent (5%) of its final bid at the Auction (the "Additional Deposit") with **Time Being Of The Essence** as to the Successful Bidder's obligation to increase the Deposit;

n.      All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and these Bid Procedures;

o.      Once the Successful Bidder is identified, the Debtor may, consistent with the Plan, submit the Successful Bid for approval by the Bankruptcy Court; and

p.      The Auction shall be transcribed by a court reporter and all Qualified Bidders will be required to sign in and identify their attendance with the court reporter.

## IV.   <u>Miscellaneous</u>

a.      The Debtor, in consultation with Wilmington Trust, reserves the right to reject any offeror or bidder, who in the Debtor's reasonable business judgment, is believed not financially capable of consummating the purchase of the Property.  The Debtor, consistent with the Plan and Wilmington Trust's right to object thereto, reserves the right to withdraw the Property from sale as it deems necessary or appropriate in its reasonable business judgment.

b.      Nothing contained in these Bid Procedures is intended to supersede or alter any provisions of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  All of the terms and conditions set forth in these Bid Procedures are subject to modification as may be directed by the Debtor, with the prior consent of Wilmington Trust or by the Bankruptcy Court.  The Debtor, with the prior consent of Wilmington Trust, and upon notification to the Office of the United States Trustee, reserves the right to modify the Bid Procedures to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

c.      With respect to any of the foregoing provisions where the Debtor is permitted to act in consultation with Wilmington Trust, in the event that Wilmington Trust does not agree with the Debtor's determination, the dispute may be submitted to the Bankruptcy Court for determination.

d.      For the avoidance of any doubt, Wilmington Trust shall be deemed a Qualified Bidder.  In addition, nothing contained herein shall be deemed to constitute Wilmington Trust's acceptance of any plan, lack of objection to any disclosure statement or other waiver or postponement of any right or remedy that Wilmington Trust has or may have.

e.      These Bid Procedures may be modified so as to be consistent with the terms of the Plan and Qualified Bidders will be notified of such modifications on or prior to the commencement of the Auction.

I have read these Bid Procedures and agree to be bound by them. (**Please print clearly**)

Date: _____

Bidder: _____

Signature: _____

Title: _____

Address: _____

E-Mail: _____

Phone Number: _____

Attorney Info: _____