**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                            :
                                                  :    Chapter 11
C.T.W. REALTY CORP.,                              :
                                                  :    Case No. 19-11425 (MKV)
                Debtor.              :
                                                  :
------------------------------------------------------------x

# DEBTOR'S REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER (A) APPROVING THE DISCLOSURE STATEMENT, (B) ESTABLISHING SOLICITATION, VOTING AND TABULATION PROCEDURES, (C) SCHEDULING A CONFIRMATION HEARING, (D) ESTABLISHING PROCEDURES FOR FILING CONFIRMATION OBJECTIONS, AND (E) GRANTING RELATED RELIEF

HERRICK, FEINSTEIN LLP
Steven B. Smith
Meaghan Millan
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Counsel for Debtor and Debtor-In-Possession*

Dated: New York, New York
       September 9, 2019

**Table of Contents**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   Wilmington Trust's Objections Are Confirmation Objections Which Should Not Bar Approval of the Disclosure Statement ..................................................................................2

    A.   Wilmington Trust's Argument that the Plan is "Patently Unconfirmable" Should Be Reserved for the Confirmation Hearing ...............................................2

    B.   A Debtor May Reinstate a Mortgage Following Entry of a Foreclosure Judgment and Before the Foreclosure Sale ...............................................................4

    C.   If the Debtor Elects Reinstatement Pursuant to Section 1124(2) of the Bankruptcy Code, Then Wilmington Trust Is, As A Matter of Law, Unimpaired .................................................................................................................9

II.  The Amended Disclosure Statement Contains Adequate Information Under Section 1125(a)(1) of the Bankruptcy Code ....................................................................................10

    A.   No Disclosure Regarding Pre-Petition Defaults .....................................................10

    B.   No Liquidation Analysis ............................................................................................11

    C.   Post-Reinstatement Operation of the Debtor .........................................................12

    D.   Inadequate Information Regarding Which Track the Debtor Will Choose ...........13

    E.   Other Alleged Disclosure Shortcomings .................................................................13

CONCLUSION................................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Acevedo*,
    26 B.R. 994 (E.D.N.Y. 1982) ..........................................................................................5, 6

*In re Cardinal Congregate I*,
    121 B.R. 760 (Bankr. S.D. Ohio 1990)......................................................................3, 4, 9

*In re Copy Crafters Quickprint, Inc.*,
    92 B.R. 973 (Bankr. N.D.N.Y. 1988) ................................................................................3

*Dulberg v. Ebenhart*,
    68 A.D.2d 323 (1st Dep't 1979) ........................................................................................6

*In re El Comandante Mgmt. Co., LLC*,
    359 B.R. 410 (Bankr. D.P.R. 2006) ...............................................................................2, 3

*In re Galasso*,
    249 B.R. 54 (S.D.N.Y. 2000)..............................................................................................6

*In re Garner*,
    13 B.R. 799 (Bankr. S.D.N.Y. 1981)..................................................................................9

*In re Hewitt*,
    16 B.R. 973 (Bankr. D. Alaska 1982)............................................................................6, 7

*In re Kizzac Mgmt. Corp.*,
    44 B.R. 496 (Bankr. S.D.N.Y. 1984)..................................................................................9

*In re Kumari*,
    2019 WL 1423083 (Bankr. E.D.N.Y. Mar. 27, 2019) ........................................................5

*In re La Paglia*,
    8 B.R. 937 (Bankr. E.D.N.Y. 1981)....................................................................................9

*Laura Andrew, Inc. v. DLRA Group, LLC*,
    62 Misc. 3d 615 (N.Y. Sup., Suffolk Cnty. 2018) ..............................................................6

*Matter of Madison Hotel Assocs.*,
    749 F.2d 410 (7th Cir. 1984) ..............................................................................................7

*In re Monroe Well Service, Inc.*,
    80 B.R. 324 (Bankr. E.D. Pa. 1987) ...................................................................................4

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983) .......................................................................................................... 7

*In re PC Liquidation Corp.*,
   383 B.R. 856 (E.D.N.Y. 2008) ......................................................................................... 2

*In re Pearson*,
   10 B.R. 189 (Bankr. E.D.N.Y. 1981) ............................................................................... 9

*In re Quigley Co., Inc.*,
   377 B.R. 110 (Bankr. S.D.N.Y. 2007) ......................................................................... 2, 4

*In re Saint Peter's Sch.*,
   16 B.R. 404 (Bankr. S.D.N.Y. 1982) ............................................................................... 8

*In re Taddeo*,
   15 B.R. 273 (E.D.N.Y. 1981), *aff'd*, 685 F.2d 24 (2d Cir. 1982) .............................. 5, 8, 9

*In re Taddeo*,
   9 B.R. 299 (Bankr. E.D.N.Y. 1981) ................................................................................. 5

*In re Triangle Laboratories, Inc.*,
   663 F.2d 463 (3d Cir. 1981) ............................................................................................. 9

*Valente v. Sav. Bank of Rockville*,
   34 B.R 362, 366 (D. Conn. 1983) .................................................................................... 8

**Statutes**

11 USC § 10.02 .................................................................................................... *passim*

11 USC § 1124 ..................................................................................................... *passim*

11 USC § 365 ......................................................................................................... 4, 5

11 USC § 1125 ....................................................................................................... 2, 14

11 USC § 1146(a) ....................................................................................................... 12

11 USC §§ 1322 ........................................................................................................... 5

The Bankruptcy Act of 1898 ("Nelson Act", July 1, 1898, ch. 541, 30 Stat. 544) ............ 9

**Other Authorities**

*7 Collier on Bankruptcy* § 1124.01 (16th ed. 2019) .......................................................................10

Senate Report No. 95-989, 95th Cong., 2d Sess. 120 (1978) ..........................................................7

TO:  **THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE**

C.T.W. Realty Corp. (the "Debtor"), the debtor and debtor in possession, by its attorneys, Herrick, Feinstein LLP, respectfully submits this reply (i) in further support of its Motion[1] [Dkt. No. 48] for approval of the Disclosure Statement [Dkt. No. 47][2] and related relief, and (ii) in response to Wilmington Trust's objection to the Motion [Dkt. No. 63] (the "Objection")[3]:

**PRELIMINARY STATEMENT**

Wilmington Trust's argument that the Plan, on its face, is "patently unconfirmable" and, as a result, the Motion should be denied, is plainly incorrect. The fact that the Plan preserves the Debtor's right to seek Reinstatement does not render the plan, *on its face*, unconfirmable, as Section 1124(2) of the Bankruptcy Code specifically affords the Debtor the right to reinstate some or all of its debts. The real question is whether the Debtor will be able to implement Reinstatement under applicable law, and that should be addressed at the Confirmation Hearing, not at the Disclosure Statement Hearing.

In any event, Wilmington Trust is wrong that the Debtor will not be able to achieve Reinstatement under New York state law. As discussed below, the Mortgage did not merge into the Foreclosure Judgement because the Debtor filed the Chapter 11 Case prior to the foreclosure sale on the Property. Because the foreclosure sale never occurred, the Mortgage exists, and, therefore, the Debtor can seek to reinstate it.

Finally, the Debtor's Amended Disclosure Statement resolves all of Wilmington Trust's allegations of inadequate disclosure and provides more than adequate information sufficient to

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.
[2] The Debtor will be filing the First Amended Disclosure Statement (the "Amended Disclosure Statement") and the First Amended Plan of Reorganization (the "Amended Plan") in advance of the hearing.
[3] Wilmington Trust is the only creditor who filed an objection to the Disclosure Statement.

1

enable a hypothetical investor to make an informed judgment about the Plan and about whether it will receive a greater recover pursuant to the Plan or through a chapter 7 liquidation.

For these reasons, the Debtor respectfully submits that the Court deny the Objection and grant the Motion so that the Debtor and its broker can proceed expeditiously down the path towards confirmation.

## ARGUMENT

I. **Wilmington Trust's Objections Are Confirmation Objections Which Should Not Bar Approval of the Disclosure Statement**

    A. *Wilmington Trust's Argument that the Plan is "Patently Unconfirmable" Should Be Reserved for the Confirmation Hearing*

1. At this stage, the Bankruptcy Court's task is to determine whether the Amended Disclosure Statement contains "adequate information" pursuant to Section 1125 of the Bankruptcy Code. *In re Quigley Co., Inc.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).

2. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

3. "Beyond the statutory guidelines described in § 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court." *In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 414 (Bankr. D.P.R. 2006) (citation omitted); *see In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) (affirming order approving

2

disclosure statement). And "it is within [the] court's discretion to address" plan defects that make a plan unconfirmable, "that is, when the 'plan is so fatally, and obviously flawed that confirmation is impossible.'" *In re El Comandante Mgmt. Co., LLC*, 359 B.R. at 415 (citations omitted).

4. The disclosure statement hearing should be limited to issues relating to the adequacy of disclosure and, unless the "plan of reorganization which is so fatally flawed that confirmation is ***impossible***," plan confirmation objections should not be heard in the context of a disclosure statement hearing. *See In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (emphasis added) (overruling "patently unconfirmable" objections but directing the filing of an amended disclosure statement due to adequate disclosure concerns).

5. Indeed, "care must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected, and objections are restricted to those defects that could not be cured by voting, and where the pertinent material facts are either not at issue or have been fully developed at the disclosure statement hearing." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988). In fact, *In re Copy Crafters Quickprint, Inc.* offers a picture of a truly "patently unconfirmable" plan, in which it would be appropriate to deny approval of an accompanying disclosure statement. There, the Debtor's proffered disclosure statement, among other deficiencies, was "premised on an unsupported and self-serving valuation and a speculative sale," "fail[ed] to designate which creditors belong in which class in its summary of the plan" (and in fact noted six classes, wherein the accompanying plan only noted fived classes), and failed to mention "likely" potential litigation to determine the amount of a vastly overstated claim.

6. As discussed herein, none of Wilmington Trust's objections describe anything tantamount to a fatal flaw in the Plan in that confirmation is "impossible" and, for that reason,

3

Wilmington Trust's objections should be overruled and considered (if raised at that time) only in connection with the Confirmation Hearing.

7.  And importantly, "[w]here objections relating to confirmability of a plan of reorganization raise novel or unsettled issues of law, the Court will not look behind the disclosure statement to decide such issues at the hearing on the adequacy of the disclosure statement." *In re Cardinal Congregate I*, 121 B.R. at 764. Indeed, it is only appropriate for a Bankruptcy Court to deny approval of a disclosure statement that otherwise provides adequate information "when a court is convinced that the plan could not possibly be confirmed." *In re Monroe Well Service, Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (citations omitted) (noting that objections "must also concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing").

8.  As Wilmington Trust's objections to the Disclosure Statement speak merely to "confirmation issues," and the Disclosure Statement "does not describe a plan that is unconfirmable as a matter of law," *In re Quigley Co., Inc.*, 377 B.R. at 119, approval of the Disclosure Statement is appropriate.

B.  ***A Debtor May Reinstate a Mortgage Following Entry of a Foreclosure Judgment and Before the Foreclosure Sale***

9.  Section 1124(2) of the Bankruptcy Code permits a debtor to "reinstate" and de-accelerate a payment obligation, as part of a plan of reorganization, if the debtor:

> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

4

> (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
>
> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

*See* 11 USC § 1124.[4]

10. And in the Second Circuit, bankruptcy courts have held that debtors may reinstate mortgages subject to judgments of foreclosure, *provided* that a foreclosure sale has not yet occurred. "Under New York law, a foreclosed mortgage is not merged into the foreclosure judgment until the actual sale of the property occurs. Since the mortgage 'exists' up to the time of actual sale of the property, it remains subject to cure pursuant to § 1322(b)(3) and (5). Accordingly . . . a debtor, under Chapter 13 may employ the curative provisions of § 1322(b)(5) to de-accelerate a mortgage obligation and reinstate its original payment schedule at any time prior to the actual sale of the encumbered property." *In re Acevedo*, 26 B.R. 994, 997 (E.D.N.Y. 1982) (citing cases).

11. In reaching this holding, the *Acevedo* court relied on the rationale articulated in *In re Taddeo*, 9 B.R. 299 (Bankr. E.D.N.Y. 1981), which was ultimately affirmed by the Second Circuit. *See In re Taddeo*, 15 B.R. 273, 276 (E.D.N.Y. 1981) ("under New York law, a mortgage is not extinguished and title does not pass until there is a foreclosure sale"), *aff'd*, 685 F.2d 24, 28-29 (2d Cir. 1982); see *also In re Kumari*, 2019 WL 1423083, at *2 (Bankr. E.D.N.Y. Mar. 27, 2019) (citing cases).

---

[4] With respect to the so-called "incurable" non-monetary defaults highlighted by Wilmington Trust (Objection ¶¶ 50-51), which characterization is disputed by the Debtor, the Debtor respectfully refers the Court to Section 1124(2)(D), which provides that a Debtor should compensate a claim holder "for any actual pecuniary loss incurred by such holder as a result of" nonmonetary defaults. Wilmington Trust has failed to identify any such actual pecuniary loss arising from such defaults, but even if such loss existed, the Bankruptcy Code has provided a remedy.

5

12. Indeed, as explained in *Dulberg v. Ebenhart*, 68 A.D.2d 323, 327 (1st Dep't 1979), cited by *In re Acevedo*:

> It is well recognized that a judgment of foreclosure and sale is final and an adjudication of all questions at issue. However, to bar the interests of parties in the mortgaged premises, it is necessary that the judgment be followed by a valid sale. Under the ordinary judgment of foreclosure and the sale, the right and interest of a defendant becomes barred and foreclosed by virtue of the sale of the premises and the conveyance made thereunder, not upon the date of the entry of the judgment.

*See also In re Galasso*, 249 B.R. 54, 55 (S.D.N.Y. 2000) ("Under New York law, the foreclosed mortgage merged in the foreclosure judgment; title passed to the mortgagee (the Bank), <u>and the mortgage was extinguished when the foreclosure sale took place</u>.") (emphasis added).

13. And contrary to Wilmington Trust's claims, *In re Acevedo* and other cases permitting reinstatement following entry of a foreclosure judgment are not "based on a misunderstanding of New York law and a misreading of Second Circuit precedent" or a claimed "quirk of New York law." (Objection ¶ 35.) Rather, Wilmington Trust's analysis ignores that these cases instead reflect a proper reading of the intersect between New York law and the Bankruptcy Code, specifically the option of reinstatement under Section 1124(2).

14. Moreover, *In re Acevedo* has been adopted by a recent state court decision, *see, e.g.*, *Laura Andrew, Inc. v. DLRA Group, LLC*, 62 Misc. 3d 615, 618 (N.Y. Sup., Suffolk Cnty. 2018) ("the mortgages were not extinguished with entry of the judgment of foreclosure and sale. Under New York law, a foreclosed mortgage is not merged into the foreclosure judgment until the actual sale of the property occurs. The mortgage 'exists' up to the time of the sale of the property.")

15. Finally, Section 1124(2)'s plain language demonstrates that Congress intended for debtors to have the power to reinstate accelerated claims reduced to judgment. *See In re Hewitt*, 16 B.R. 973, 977 (Bankr. D. Alaska 1982) (discussing the "Congressional intent to apply the remedy of § 1124(2) to obligations regardless of whether or not they have been reduced to

6

judgment"); *see also Matter of Madison Hotel Assocs.*, 749 F.2d 410, 422 (7th Cir. 1984) ("The point to be gleaned from the relevant case law is that a creditor, holding a final judgment of foreclosure, is not impaired under section 1124(2) if the debtor's plan of reorganization cures the default of the accelerated loan before the foreclosure sale actually occurs or before the judgment merges into the mortgage under state law, thereby transferring title to the mortgagee.").[5]

16. Indeed, as explained by the Senate:

> [A] claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

Senate Report No. 95-989, 95th Cong., 2d Sess. 120 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787, 5906. "The Congressional policy to relieve chapter 11 debtors of the burdens of acceleration clauses should not be thwarted by the formal obtaining of a judgment. The reading of § 1124(2) to allow the bankruptcy court to look behind the state court judgment to the nature of the claim on which the judgment was rendered accords with the duties of the Court and the intent of Congress that have been found in similar situations in bankruptcy law." *In re Hewitt*, 16 B.R. at 977. "The fact that the secured creditor has reduced his rights to judgment does not materially alter those rights in the face of the bankruptcy powers of Congress. Congress is empowered to authorize the bankruptcy courts to look behind state court judgments in order to apply the policies of Federal bankruptcy law to bankruptcy matters." *Id.* at 979 (citing cases); *see also Pac. Gas &*

---

[5] And Wilmington Trust acknowledges that the Debtor still has the ability to redeem the Property under state law, and that title has not yet passed to Wilmington Trust. (Objection ¶ 40.)

7

*Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) ("Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law," including "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (citation omitted)); *In re Taddeo*, 685 F.2d at 29 ("A state law to the contrary must fall before the Bankruptcy Code."); *Valente v. Sav. Bank of Rockville*, 34 B.R 362, 366 (D. Conn. 1983) ("Because the opportunity to cure a default, secured by federal bankruptcy law and designed to protect 'the estates of debtors for their rehabilitation,' is 'paramount' to state law, no actual conflict exists with 'state court jurisdiction.' Thus, where cure is allowed by the Bankruptcy Code, any debtor who maintains a viable interest in property comprehended by the Code should have the opportunity to present a plan of cure before the equitable powers of the Bankruptcy Court.").[6]

17.     Rather, it is *In re Saint Peter's Sch.*, 16 B.R. 404 (Bankr. S.D.N.Y. 1982), relied upon by Wilmington Trust (Objection ¶¶ 33-34), which misapplies the law. *In re Saint Peter's Sch.* also concerned a bankruptcy case that was commenced after judgment but before a foreclosure sale had taken place, and the Bankruptcy Court found that "[t]he debtor cannot now propose to cure previous defaults under the mortgage and reinstate its maturity for continued payments in accordance with its terms because the debtor's rights under the mortgage were terminated pursuant to state law when the bank obtained a judgment for foreclosure prior to the filing of the Chapter 11 petition." *Id.* at 409. As sole support for this proposition, the *Saint Peter's Sch.* court cites to

---

[6] *See also* Reorganizations Under Chapter 11 of the Bankruptcy Code § 10.02 (2019) ("A controversy that has arisen under Section 1124(2)(A) concerns mortgages or other security interests that have gone to foreclosure judgment, although not to sale, either before the petition or after the petition as a result of the secured creditor's having obtained relief from the automatic stay. There are some cases holding that the debt has merged into the judgment of foreclosure and that Section 1124(2) cannot be used to cure the default, since the only 'cure' of a judgment is to pay it in full. These cases are contrary to the intent of the drafters of Section 1124(2); the better reasoning would be that this is one of those instances in which the Bankruptcy Code supersedes state law and so long as there has not been an actual foreclosure, state law doctrines of merger or the like do not apply to the debtor's right to reinstate, and should not be so interpreted." (citing cases)).

8

*In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir. 1981), a Third Circuit decision which does not discuss a debtor's rights under a mortgage or the effect of a foreclosure sale thereon, and rather concerns an *ipso facto* clause in a lease, whether the Bankruptcy Act of 1898 or the Bankruptcy Code governed the dispute (both issues are irrelevant here), and applied New Jersey law to state-law issues). And each of the Bankruptcy Court decisions relied upon, *In re Garner*, 13 B.R. 799 (Bankr. S.D.N.Y. 1981); *In re Pearson*, 10 B.R. 189 (Bankr. E.D.N.Y. 1981); *In re La Paglia*, 8 B.R. 937 (Bankr. E.D.N.Y. 1981), were decided pre-*Taddeo*, and thus are not persuasive.

18. At a minimum, the issue of whether the Debtor may reinstate a mortgage subject to a judgment of foreclosure in New York, but relating to property which has not yet been sold, is an unsettled legal dispute, which may need to be decided with a full record at the Confirmation Hearing. *In re Cardinal Congregate I*, 121 B.R. at 764.

C. ***If the Debtor Elects Reinstatement Pursuant to Section 1124(2) of the Bankruptcy Code, Then Wilmington Trust Is, As A Matter of Law, Unimpaired***

19. Wilmington Trust also argues that Reinstatement "does not leave [Wilmington Trust] Unimpaired," making the plan unconfirmable if its vote is not solicited. (Objection ¶ 41.)

20. As clearly stated by Section 1124, "a class of claims or interests is impaired under a plan ***unless***, with respect to each claim or interest of such claim, the plan (1) leaves unalerted the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; ***or***" (2) reinstates a claim or interest in accordance with the requirements of Section 1124(2). (emphasis added.) "Although the creditor's rights arising out of acceleration are in fact affected by cure and reinstatement, they are deemed unimpaired." *In re Kizzac Mgmt. Corp.*, 44 B.R. 496, 501 (Bankr. S.D.N.Y. 1984) (citations omitted); *see also In re Taddeo*, 685 F.2d at 28-29 ("Having defined impairment in the broadest possible terms, Congress carved out a small exception to impairment in [Section] 1124(2) providing that curing a default, even though it

9

inevitably changes a contractual acceleration clause, does not thereby 'impair' a creditor's claim. 'The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain.' . . . In short, 'curing a default' in Chapter 11 means the same thing as it does in Chapters 7 or 13: the event of default is remedied and the consequences are nullified.") (citations omitted); *see also 7 Collier on Bankruptcy* § 1124.01 (16th ed. 2019) ("Section 1124 of the Bankruptcy Code indicates when a class of claims or interests is not impaired.").

21. Thus, if the Debtor were to elect the Reinstatement option, in accordance with Section 1124(2), Wilmington Trust would be, by definition, unimpaired.

## II. The Amended Disclosure Statement Contains Adequate Information Under Section 1125(a)(1) of the Bankruptcy Code

22. Wilmington Trust identified the following five sections in the Disclosure Statement which allegedly provided no or inadequate information: (i) no disclosure regarding pre-petition defaults, (ii) no liquidation analysis, (iii) inadequate information regarding how the Debtor will operate post-Reinstatement, (iv) inadequate information regarding which track – sale, Refinancing or Reinstatement – the Debtor will choose to pursue, and (v) other alleged disclosure shortcomings. The Debtor will address each objection in turn.

### A. *No Disclosure Regarding Pre-Petition Defaults*

23. Wilmington Trust argues that the Disclosure Statement contains inadequate background regarding the Debtor's default and the resulting entry of the Foreclosure Judgment. (Objection ¶ 49.)

24. In response, the Debtor amended Section II.C. (The Foreclosure Action) of the Disclosure Statement to provide for a listing of some of the monetary and non-monetary defaults

10

and disclosed that a more extensive listing of defaults can be found at Dkt. No. 5, Exhibits 4 through 31.

25. The Debtor respectfully submits that the Amended Disclosure Statement provides adequate information regarding the Debtor's pre-petition conduct and the events which led to the filing of the Chapter 11 Case.

B. *No Liquidation Analysis*[7]

26. Wilmington Trust argues that the Debtor's omission of a liquidation analysis represents a "fundamental flaw."[8] (Objection ¶ 54.)

27. In response, the Debtor amended Section XII(b) of the Disclosure Statement to provide a more fulsome discussion of what creditors, other than Wilmington Trust, stand to receive under (i) the Refinancing option, (ii) the Reinstatement option and (iii) a sale performed pursuant to a confirmed plan in chapter 11 versus through a chapter 7 liquidation.

28. More specifically, the Amended Disclosure Statement now clearly provides that Titan and all unsecured creditors will receive a 100% recovery on account of their Allowed Claims whether the Debtors opt to implement a Refinancing or a Reinstatement.

29. Moreover, the Amended Disclosure Statement now contains a discussion of the primary advantages of pursuing a sale of the Property pursuant to the Plan, in chapter 11, rather than through a chapter 7 liquidation, namely: (i) having Rosewood conduct the marketing and auction process pursuant to court-approved Bid Procedures designed to maximize the Property's

---

[7] The Office of the United States Trustee also raised this issue and the Debtor engaged in several telephonic conferences with the U.S. Trustee's office to articulate its position. The U.S. Trustee's office did not file an objection to the Disclosure Statement.

[8] Wilmington Trust's objection here is curious, to say the least, considering (i) it knows it is unimpaired under a Reinstatement (whether it likes Reinstatement or not), (ii) it knows it will receive a 100% recovery, and is therefore unimpaired, under a Refinancing and (iii) it concedes in its Objection that a sale pursuant to a confirmed plan in chapter 11 will provide a greater recovery than through a chapter 7 liquidation (Objection ¶ 55.). Yet, no other creditors, who arguably would need a better understanding of their recoveries under the Plan versus through a chapter 7 liquidation, interposed an objection to the Disclosure Statement.

11

value, (ii) utilizing the transfer tax exemption set forth in Section 1146(a) of the Bankruptcy Code which can only be utilized in connection with a sale pursuant to a confirmed chapter 11 plan, and (iii) the additional costs and delay which will arise when a chapter 7 trustee is appointed and new professionals are retained.

30. Therefore, because Titan and unsecured creditors cannot receive a greater recovery under chapter 7 than under the Refinancing or Reinstatement options pursuant to the Plan – because they are already receiving a 100% recovery – the only remaining issue for these creditors to consider is whether they stand to recover more through a sale pursuant to the Plan in chapter 11 or through a chapter 7 liquidation. And the advantages of pursuing a sale in chapter 11, as described in the Amended Disclosure Statement, clearly weigh in favor of remaining in chapter 11. And Wilmington Trust concedes as much in its Objection when it essentially confirms that a liquidation analysis would not be necessary "[i]f the Plan were a pure sale plan." (Objection ¶ 55.)

31. The Debtor respectfully submits that the Amended Disclosure Statement provides adequate information to enable creditors to determine whether they will receive a greater recovery pursuant to the Plan, in chapter 11, or through a chapter 7 liquidation.

C. *Post-Reinstatement Operation of the Debtor*

32. Wilmington Trust argues that the Disclosure Statement provides inadequate information regarding how the Debtor will operate if Reinstatement occurs. (Objection ¶ 56.)

33. In response, the Debtor amended Section V.E.2 in the Disclosure Statement to clearly provide how the Debtor will operate post-sale, post-Refinancing, and post-Reinstatement. Specifically, in the event of a Reinstatement, (i) the Debtor shall continue to exist in its current form, (ii) all of the Debtor's assets, including the Property, will vest in the Debtor, (iii) the Property will be managed, by the Debtor and (iv) the Debtor shall comply in all respects with each of the terms and provisions of the Loan Documents.

34. The Debtor respectfully submits that the Amended Disclosure Statement provides adequate information regarding how the Debtor intends to operate post-Reinstatement.[9]

D. *Inadequate Information Regarding Which Track the Debtor Will Choose*

35. Wilmington Trust argues that the Debtor's failure to disclose a "set of factors by which the Debtor will decide whether to pursue Sale, Refinance or Reinstatement" represents another fundamental lack of disclosure. (Objection ¶ 58.) Specifically, Wilmington Trust argues that the Disclosure Statement fails to provide adequate information since no information has been provided to enable any creditor to anticipate its distribution in a Refinance or Reinstatement. (*Id.*)

36. In response, the Debtor has amended the Disclosure Statement to clearly provide that Titan and all unsecured creditors will receive a 100% recovery on account of their Allowed Claims whether the Debtor opts to implement a Refinancing or Reinstatement.

37. In light of the foregoing, the Debtor respectfully submits that the Amended Disclosure Statement provides adequate information to enable any creditor to anticipate its distribution in a Refinance or Reinstatement.

E. *Other Alleged Disclosure Shortcomings*

38. Finally, in what appears to be a last ditch effort to poke holes in the adequacy of the Debtor's disclosure where there are none, Wilmington Trust argues that (i) the Disclosure Statement omits consideration of Wilmington Trust's plan, (ii) the Disclosure Statement fails to disclose how the possibility of Reinstatement or Refinance may affect bidding for a sale, (iii) the Disclosure Statement fails to provide how, if the Debtor is to be wound down, Reinstatement or Refinancing makes any sense, and (iv) the Disclosure Statement provides no information to show

---

[9] The Plan does not, under any scenario, provide for the Debtor's retention of its equity without first providing payment in full to all creditors on account of their Allowed Claims or, in the case of Wilmington Trust, treating its Allowed Claim as unimpaired through a Reinstatement.

13

that the Debtor's principal should receive a release of his guaranty. (Objection ¶¶ 59-61.) The Debtor responds as follows:

> *First*, Wilmington Trust has not filed a plan because its motion to terminate the Debtor's exclusive periods was denied by this Court. Nonetheless, in its limited objection to the Bid Procedures Motion, Wilmington Trust indicated it would support the Plan if it focused only on a sale or Refinancing. Thus, the only difference between the Plan and a possible Wilmington Trust plan is the Debtor's preservation of its right to seek Reinstatement which, if implemented, would result in all creditors being unimpaired. Notwithstanding the foregoing, the Debtor amended Section XIII.B.1 by adding a paragraph noting Wilmington Trust's assertion that it can propose a plan that will provide greater value to creditors.
>
> *Second*, Wilmington Trust offers no proof to support its assertion that the possibility of Reinstatement or Refinancing could somehow chill bidding. The irony of this argument is that if anything is going to chill bidding, it's Wilmington Trust's ability to credit bid at an auction.
>
> *Third*, the Debtor is to be wound down only under a sale scenario, not under Reinstatement or Refinancing.
>
> *Fourth*, the Debtor is not seeking to grant its principal a release of his guaranty, which claim is specifically preserved in the exculpation provision.

## **CONCLUSION**

39.     The Amended Disclosure Statement plainly meets the requirements of Section 1125(a)(1). Wilmington Trust's objections concerning the confirmability of the Plan should be reserved for the Confirmation Hearing, as the Plan is not patently unconfirmable on its face. And even if the Court were to consider Wilmington Trust's arguments to the contrary, it should recognize that Wilmington Trust has only identified an unsettled issue of law, and reserve judgment for the confirmation hearing on a full record.

40.     The Debtor respectfully submits that approving the Amended Disclosure Statement is in the best interests of the estate while denying the Motion will simply result in the very delay Wilmington Trust seeks to avoid. This case is about the value of the Property; the Debtor and

Rosewood stand poised to immediately commence the process that will maximize the value of the Property *for all* creditors.

**WHEREFORE**, for the reasons contained herein and in the Motion, the Debtor respectfully requests that the Court enter an order (i) granting the Motion and the relief requested therein, (ii) denying the Objection and (iii) granting such other relief as the Court deems just and appropriate.

Dated: New York, New York
September 9, 2019

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: */s/ Steven B. Smith*
Steven B. Smith
Meaghan Millan
2 Park Avenue
New York, NY 10016
Tel: 212.592.1400
Fax: 212.592.1500
Email: ssmith@herrick.com
Email: mmillan@herrick.com