> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.    THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:                                             :

                                                   :          Chapter 11

C.T.W. REALTY CORP.,                               :

                                                   :          Case No. 19-11425 (MKV)

                         Debtor.                    :

                                                   :

-----------------------------------------------------------x

### SECOND AMENDED DISCLOSURE STATEMENT
### FOR PLAN OF REORGANIZATION BY C.T.W. REALTY CORP.
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Steven B. Smith
Meaghan Millan

*Counsel for Debtor and Debtor-In-Possession*

**TABLE OF CONTENTS**

I.   PURPOSES AND LIMITATIONS OF DISCLOSURE STATEMENT..............................1

    A.   Purpose of Disclosure Statement ..........................................................................1

    B.   Definitions...............................................................................................................1

    C.   Enclosures ...............................................................................................................1

    D.   Representations and Limitations.............................................................................2

    E.   Important Dates........................................................................................................3

    F.   Solicitation Procedures ...........................................................................................3

    G.   Recommendation .....................................................................................................4

    H.   Inquiries ...................................................................................................................4

II.  BACKGROUND ......................................................................................................................4

    A.   About the Debtor......................................................................................................4

    B.   Debt Structure ..........................................................................................................5

    C.   The Foreclosure Action............................................................................................5

III. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE .........................................6

    A.   Wilmington Trust's Motion to Excuse Compliance  By Receiver with Section 543 of the Bankruptcy Code ........................................................................6

    B.   Retention of Professionals .......................................................................................6

    C.   Section 341 Meeting of Creditors ...........................................................................7

    D.   Wilmington Trust's Motion to Terminate the Debtor's  Exclusive Period Within Which to File a Plan of Reorganization....................................................7

    E.   Post-Petition Financing............................................................................................7

    F.   The Plan and the 120-Day Marketing Period ..........................................................7

    G.   Rosewood's Marketing Efforts ...............................................................................8

IV.  SUMMARY OF THE PLAN ..................................................................................................9

    A.   General Plan Objectives...........................................................................................9

i

|  | B. | Provisions Governing Order and Method for Distributions Under the Plan | 9 |
|  | C. | Classes of Claims | 9 |
| V. | | MEANS OF IMPLEMENTING THE PLAN | 13 |
|  | A. | Plan Funding | 13 |
|  | B. | Sale of Property | 13 |
|  | C. | Refinancing | 14 |
|  | D. | Reinstatement | 14 |
|  | E. | Notice of Sale, Refinancing or Reinstatement | 15 |
|  | F. | Post-Confirmation Date Management | 15 |
|  | G. | Filing of Documents | 16 |
|  | H. | Resolution of Disputed Claims & Reserves | 16 |
|  | I. | Provisions Governing Distributions | 16 |
| VI. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 19 |
|  | A. | Rejection of Executory Contracts and Unexpired Leases | 19 |
|  | B. | Assumption and Assignments of Executory Contracts and Unexpired Leases | 20 |
|  | C. | Assumption Cure Payments | 20 |
|  | D. | Rejection Claims | 20 |
|  | E. | Bar to Rejection Claims | 20 |
| VII. | | INJUNCTION AND EXCULPATION | 20 |
|  | A. | Binding Effect | 20 |
|  | B. | Injunction | 21 |
|  | C. | Exculpation | 21 |
|  | D. | All Distributions Received in Full and Final Satisfaction | 22 |
| VIII. | | CONDITIONS PRECEDENT | 22 |
|  | A. | Conditions Precedent to Confirmation of the Plan | 22 |

B.    Conditions Precedent to the Plan Effective Date ....................................................22

IX.    RETENTION OF JURISDICTION ...................................................................................23

A.    Retention of Jurisdiction ..................................................................................23

B.    Post-Effective Date Jurisdiction .....................................................................25

X.    CERTAIN TAX CONSEQUENCES OF THE PLAN ......................................................25

A.    General .............................................................................................................25

B.    Tax Consequences of Payment of Allowed  Claims Pursuant to Plan Generally..26

XI.    MISCELLANEOUS PLAN PROVISIONS .....................................................................27

A.    Orders in Aid of Consummation......................................................................27

B.    Compliance with Tax Requirements................................................................27

C.    Due Authorization by Claim Holders ..............................................................27

D.    Amendments ....................................................................................................27

E.    Reservation of Rights.......................................................................................27

F.    Revocation or Withdrawal of Plan...................................................................28

G.    Request for Relief Under Section 1129(b)........................................................28

H.    Additional Documents .....................................................................................28

I.    Section Headings .............................................................................................28

J.    Computation of Time.......................................................................................28

K.    Successors and Assigns....................................................................................28

L.    Notices .............................................................................................................29

M.    Governing Law .................................................................................................29

N.    Severability ......................................................................................................29

O.    Business Day.....................................................................................................29

XII.    CONFIRMATION OF PLAN – REQUIREMENTS .........................................................29

A.    Absolute Priority Rule .....................................................................................30

B.      Best Interest of Creditors Test; Liquidation Analysis.............................................30

XIII.   PLAN RELATED RISK FACTORS AND ALTERNATIVES  TO CONFIRMATION
        AND CONSUMMATION OF THE PLAN ......................................................................33

        A.      Certain Bankruptcy-Related Considerations...........................................................33

        B.      Alternatives to the Plan and Consequences of Rejection.......................................34

XIV.    PROCEDURES FOR VOTING ON PLAN ......................................................................34

XV.     CONFIRMATION HEARING...........................................................................................36

XVI.    RECOMMENDATION ......................................................................................................36

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN WHICH IS ENCLOSED WITH THIS DISCLOSURE STATEMENT. THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS AND PROVIDES FOR THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS AGAINST AND INTERESTS IN THE DEBTOR.**

C.T.W. Realty Corp. (the "Debtor") respectfully submits this Second Amended Disclosure Statement (the "Amended Disclosure Statement") pursuant to Section 1125 of title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to accompany its Second Amended Plan of Reorganization dated December 6, 2019 (the "Plan"), which has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") [Dkt. No. 88].

## I.     PURPOSES AND LIMITATIONS OF DISCLOSURE STATEMENT

### A.     Purpose of Disclosure Statement

The purpose of the Amended Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) advises holders of Claims of their rights under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

You are urged to read this Amended Disclosure Statement in order to determine what rights you may have to vote on or object to the Plan and before making any decision on any such course of action. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they existed before the institution of this chapter 11 case (the "Chapter 11 Case"). Please note, however, that this Amended Disclosure Statement cannot tell you everything about your rights. For instance, this Amended Disclosure Statement cannot and does not provide a complete description of the financial status of the Debtor, all of the applicable provisions of the Bankruptcy Code, or other matters that may be deemed significant by creditors and other parties in interest. You are also encouraged to consult with your lawyers and/or advisors as your review and consider the Amended Disclosure Statement and the Plan to enable you to obtain more specific advice on how the Plan will affect you.

### B.     Definitions

Unless otherwise defined herein, capitalized terms used in this Amended Disclosure Statement will have the meanings ascribed to such terms in the Plan.

### C.     Enclosures

The following materials are included with this Amended Disclosure Statement:

1

1.      A copy of the Plan;

2.      A copy of an order approving the Disclosure Statement (the "Disclosure Statement Approval Order") which states: (a) the date by which objections to confirmation of the Plan must be served and filed, (b) the date by which all votes with respect to the Plan must be cast, (c) the date of the hearing in the Bankruptcy Court to consider confirmation of the Plan, and (d) other relevant information;

3.      Notice of Confirmation Hearing.   A copy of the notice of the deadline for submitting ballots to accept or reject the Plan and, among other things, the date, time and place of the Confirmation Hearing and the deadline for filing objections to confirmation of the Plan (the "Confirmation Hearing Notice"); and

4.      A ballot (and return envelope) for voting to accept or reject the Plan.

**D.      Representations and Limitations**

**NO PERSON IS AUTHORIZED IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF VOTES THEREON TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU.**

**THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTOR AS OF THE DATE HEREOF.  ALTHOUGH THE DEBTOR HAS USED BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED.   THE DEBTOR BELIEVES THAT THIS DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.**

**THE STATEMENTS CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS AMENDED DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS AMENDED DISCLOSURE STATEMENT AND/OR THE DATE THAT THE MATERIALS RELIED UPON IN PREPARATION OF THIS AMENDED DISCLOSURE STATEMENT WERE COMPILED.   THE AMENDED DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL**

CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST THE DEBTOR.

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. EACH CREDITOR IS ENCOURAGED TO READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.

E.    Important Dates

The Bankruptcy Court approved this Amended Disclosure Statement by and through the Disclosure Statement Approval Order entered on January [___], 2020 after notice and hearing and in accordance with Section 1125 of the Bankruptcy Code. The Bankruptcy Court found that the information contained herein is of the kind, and is sufficiently detailed, to enable a hypothetical, reasonable investor typical of the class being solicited to make an informed judgment concerning the Plan. HOWEVER, THE BANKRUPTCY COURT HAS NOT CONFIRMED THE PLAN, NOR IS THIS AMENDED DISCLOSURE STATEMENT OR THE DISCLOSURE STATEMENT APPROVAL ORDER TO BE CONSTRUED AS APPROVAL OR ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

As stated in the Disclosure Statement Approval Order, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for February 13, 2020 at 10:00 a.m. Holders of Claims and other parties in interest may attend this hearing. Objections to confirmation of the Plan must be filed on or before February 6, 2020 at 4:00 p.m. as set forth in the Disclosure Statement Approval Order.

All Ballots with respect to the Plan must be completed in full and signed to be counted in the tabulation of the votes and must be received by the Debtor no later than 4:00 p.m. on February 4, 2020.

Completed and signed Ballots should be returned by first class mail to the Debtor's counsel at the below address in the enclosed self-addressed return envelope:

Herrick, Feinstein LLP
2 Park Avenue, 22nd Floor
New York, NY 10016
Attention: Larisa Poretsky

F.    Solicitation Procedures

Creditors holding Claims and equity holders holding Interests that are impaired have the right to vote to accept or reject the Plan. Generally speaking, a Claim or Interest is impaired if the Plan alters the legal, contractual or equitable rights of the holder of the

Claims or Interests. **A Class of creditors accepts the Plan when creditors holding two-thirds in amount of such class and more than one-half in number of the Claims in such class who actually cast their ballots vote to accept the Plan.**

**In this Chapter 11 Case, the Plan contains four (4) Classes of Claims. The Plan provides that holders of Claims in three of the four classes are impaired in that the Plan alters the legal, contractual and equitable rights of the holders of such Claims.**

### G.   Recommendation

In the opinion of the Debtor, the treatment of creditors under the Plan contemplates a greater recovery than that which is likely to be achieved under any other alternative for the liquidation of the Debtor's assets under chapter 11 or chapter 7 of the Bankruptcy Code. More specifically, it is the Debtor's opinion that it is premature to conclude definitively that a sale of the Property will result in the greatest possible value for the estate. As such, the Debtor's plan, and any plan that may be filed by another party, must preserve the Debtor's ability to Refinance or Reinstate until such time as the marketing process has concluded and the value of the Property has been determined. Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of the Debtor's creditors and recommends that all holders of Claims entitled to vote on the Plan vote to accept the Plan.

### H.   Inquiries

If you have any questions about the packet of materials that you have received, please contact Steven B. Smith by email ssmith@herrick.com or by telephone at 212.592.1474 during normal business hours.

## II.   BACKGROUND

### A.   About the Debtor

The Debtor is a corporation organized under New York law, and is a single asset real estate company, as defined in 11 U.S.C. § 101(51B). The Debtor owns a commercial property located at 55-59 Chrystie Street, New York, New York 10002 and further identified as Block 303 Lot 27 in the Borough of Manhattan as shown on the City of New York Tax Map, in the County of New York, State of New York (the "Property"). The Property is a five-story industrial building erected in the 1880s, originally utilized as a brewery. The Property possesses approximately 45,000 usable square feet. In the 1970s, the family of the Debtor's President, Mr. Gary Tse, established its first garment factory in the Property. When the Debtor acquired the Property in 1982, the Debtor converted the majority of the Property to garment factory use alongside other industrial and non-traditional uses, *e.g.*, work/live artist lofts, art galleries, restaurant equipment manufacturing and warehousing.

In the early 2000s, the Debtor repositioned the Property and leased office and creative lofts. The Debtor invest significant capital to upgrade the Property's infrastructure and for tenant improvements.

4

Between 2017 and 2018, approximately twenty-one (21) tenants vacated the Property on their own volition, and the Debtor did not renew the leases of three (3) tenants because they were improperly using their office space as storage and logistics for their products and the tenants desired to renew their leases at below market rate levels. The Debtor actively marketed and solicited higher rent-paying tenants. However, the revenues received from existing leases were insufficient to cover operating expenses or service debt, causing the mortgagee to file a foreclosure action.

## B.    Debt Structure

On May 29, 2019, the Debtor filed schedules of assets and liabilities and statement of financial affairs for the Debtor [Dkt. No. 19] and filed an amended statement of financial affairs on June 13, 2019 [Dkt. No. 26] (collectively, the "Schedules"). The following is an overview of the Debtor's capital structure as currently understood.

### (i)    Wilmington Trust – Senior Secured Lender

On or about February 10, 2017, Ladder Capital Finance LLC ("Ladder Capital") agreed to make a loan to the Debtor in the amount of $25,125,000.00 (the "Loan") pursuant to the terms of a loan agreement, dated February 10, 2017 (the "Loan Agreement") and evidenced by an Amended, Restated and Consolidated Promissory Note, dated February 10, 2017 (the "Note"). The Loan is secured by an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement, dated February 10, 2017 (the "Mortgage"), which encumbers the Property.

Effective as of March 13, 2017, Ladder Capital assigned the Loan, Note and Mortgage, and other related documents (together, the "Loan Documents"), to Ladder Capital Finance II, LLC, which subsequently assigned the Loan Documents to Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LLCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 ("Wilmington Trust").

### (ii)    Titan Capital – Second Lien Lender

On or about December 11, 2017, the Debtor entered into a Mortgage Agreement with Titan Capital ID, LLC ("Titan") pursuant to which Titan agreed to make a mortgage loan to the Debtor in the amount of $3,500,000. The Loan is secured by a lien on the Property.

## C.    The Foreclosure Action

The Debtor managed the Property for close to forty (40) years without having a foreclosure action filed against it or having to commence a bankruptcy case. Unfortunately, the Debtor ran into financial issues which resulted in a number of defaults under the Loan Documents including, among others, payment defaults, the granting of a second mortgage to Titan and certain non-monetary defaults.[1]

---

[1]  The non-monetary defaults include, among others, (i) failure to obtain a CO, (ii) failure to make repairs, (iii) permitting approvals to lapse, and (iv) building code violations.

In response to these defaults, on or about June 8, 2018, Wilmington Trust commenced a foreclosure action by filing a Summons and Verified Complaint in the Supreme Court of the State of New York, County of New York (the "State Court"). The matter is captioned as *Wilmington Trust, N.A., as Trustee for the Benefit of the Holders of LLCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26 v. C.T.W. Realty Corp., et al.* and bears Index No. 850165/2018 (the "Foreclosure Action").

On October 24, 2018, the State Court appointed Gregory A. Gilfoil as receiver of the Property (the "Receiver"). A Judgment of Foreclosure and Sale was entered on March 20, 2019 for the amount of $33,073,255.48, excluding particular interest, costs and fees, and a foreclosure sale was scheduled to occur on May 2, 2019.

An extensive detailing of the defaults that led the State Court to appoint the Receiver can be found on the Docket of the Chapter 11 Case at Docket No. 5, Exhibits 4 through 31 (the Bornheimer Declaration in support of Wilmington Trust's Section 543 motion).

## III.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

On May 1, 2019, the Debtor filed for Chapter 11 protection in order to provide itself with a reasonable opportunity to restructure its affairs, including the opportunity to pursue a sale process or other transaction which would maximize the value of the Property for the benefit of all of the Debtor's creditors.

### A.    Wilmington Trust's Motion to Excuse Compliance
### By Receiver with Section 543 of the Bankruptcy Code

On May 6, 2019, Wilmington Trust filed a motion seeking the entry of an order excusing the Receiver's compliance with Section 543 of the Bankruptcy Code. After careful consideration, the Debtor determined that permitting the Receiver to remain in place to manage the Property while the Debtor focused on its efforts to maximize the value of the Property for all creditors was in the best interests of the Debtor's estate. Thus, the Debtor did not oppose this motion. On June 4, 2019, the Bankruptcy Court entered an order granting this motion and the Receiver has continued to manage the Property post-petition.

### B.    Retention of Professionals

On June 25, 2019, the Bankruptcy Court entered an order granting the Debtor's application to employ Herrick, Feinstein LLP as its general bankruptcy counsel [Dkt. No. 28].

On July 25, 2019, the Bankruptcy Court entered an order granting the Debtor's application to employ Joseph J. Gormley, CPA as its accountant [Dkt. No. 40].

On November 5, 2019, the Bankruptcy Court entered an order granting the Debtor's application to employ Rosewood Realty Group. ("Rosewood") to serve as the Debtor's real estate advisor having, among other things, the sole and exclusive right and authority to arrange financing or recapitalization, negotiate refinancing, sell, net lease or otherwise dispose of all or any portion of the Property [Dkt. No. 81].

C.    **Section 341 Meeting of Creditors**

On June 14, 2019, Mr. Benjamin J. Higgins, Esq., of the Office of the United States Trustee, conducted the Section 341 meeting of creditors at its office located at One Bowling Green, Fifth Floor, Room 511.  The Debtor's President, Mr. Gary Tse, appeared and answered questions regarding the Debtor's financial affairs and its Schedules.

D.    **Wilmington Trust's Motion to Terminate the Debtor's**
      **Exclusive Period Within Which to File a Plan of Reorganization**

On May 24, 2019, Wilmington Trust filed its motion seeking to terminate the Debtor's exclusive period within which to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy [Dkt. No. 18].  On July 16, 2019, the Debtor filed an objection to the motion [Dkt. No. 34].  On July 19, 2019, Wilmington Trust filed its first reply in support of its motion [Dkt. No. 39] and on August 5, 2019, Wilmington Trust filed its second reply in support of its motion [Dkt. No. 45].  On August 7, 2019, the Bankruptcy Court conducted a contested hearing with respect to this motion and, after oral argument, the Bankruptcy Court denied the motion.

E.    **Post-Petition Financing**

Prior to the Chapter 11 Case, Wilmington Trust made protective advances to the Debtor so the Receiver could cover expenses related to the management of the Property.  The Debtor requested that Wilmington Trust continue making such protective advances post-petition and, to that end, the Debtor and Wilmington Trust negotiated an agreement pursuant to which Wilmington Trust agreed, but is not obligated, to advance the funds necessary for any post-petition expenses or expenditures for the administration of the Property.  While the Debtor supported protective advances for any post-petition expenses, it requested that Wilmington Trust seek Bankruptcy Court approval for the Receiver to use such advances to cover pre-petition expenses.

As a result, on July 18, 2019, Wilmington Trust filed its motion seeking the entry of an order authorizing it to make protective advances for pre-petition *and* post-petition expenses (the "Financing Motion").  Neither the Debtor nor the Office of the United States Trustee opposed the Financing Motion.

On September 3, 2019, the Bankruptcy Court entered an Order granted the Financing Motion [Dkt. No. 60].  Wilmington Trust's pre- *and* post-petition protective advances will be included in Wilmington Trust's Allowed Secured Claim.

F.    **The Plan and the 120-Day Marketing Period**

On July 30, 2019, the Debtor filed the Plan [Dkt. No. 42].  On August 13, 2019, pursuant to the Plan, the Debtor filed a motion seeking the approval of certain bid procedures for the sale of the Property and authorizing the Auction (the "Bid Procedures Motion") [Dkt. No. 46].  On September 12, 2019, the Bankruptcy Court granted the Bid Procedures Motion subject to entry of an agreed upon Order approving the Bid Procedures Motion (the "Bid Procedures Order").  On November 6, 2019, the Bankruptcy Court entered the Bid Procedures Order [Dkt. No. 82]. Pursuant to the court-approved bid procedures (the "Bid Procedures"), the Debtor shall conduct a

7

public auction for the possible sale of the Property on January 30, 2020 at 10:00 a.m. (Eastern Time), a date that is more than 120 days (the "Marketing Period") after the hearing date on the Bid Procedures Motion, to the extent there are qualified bids submitted by the bid deadline.

During the Marketing Period, the Debtor and Rosewood shall determine whether a transaction other than a sale of the Property pursuant to the Bid Procedures -- *e.g.*, a Refinancing, Reinstatement or other capital raise -- exists which would provide the Debtor's creditors with greater value than a sale of the Property.

Notwithstanding the foregoing, the Debtor shall, in its sole discretion, exercise its business judgment whether to proceed with (i) a sale to the highest and best bid upon the conclusion of the Auction or (ii) an alternative transaction which would result in a Refinancing or Reinstatement of Wilmington Trust's Allowed Claim consistent with the terms of the Plan.

G.    **Rosewood's Marketing Efforts**

Since its retention date on August 20, 2019, Rosewood has been working diligently to market the Property. More specifically, Rosewood has taken the following steps, among others, in order to maximize the value of the Property for the benefit of the Debtor's creditors:

(i)      Designed a custom website for the Property: www.55Chrystie.com;

(ii)     Conducted two professional photo shots at the Property;

(iii)    Hired an architect to provide accurate measurements, square footages, and floor plans;

(iv)     Printed two batches of postcards; a one-sided teaser and a two-sided full page;

(v)      Sponsored the American Bankruptcy Institute Las Vegas conference in order to place the postcards in all (hundreds) of the tote bags;

(vi)     Hired a third-party service to create the aerial and other maps for marketing materials;

(vii)    Designed the 82-page offering memorandum for email and print, to be sent to Rosewood's top investors via email and snail mail;

(viii)   Sent printed postcards to 7,500 investors;

(ix)     Created 500 thumb drives, with custom logos of the Property, to put the Property photos and videos on to be sent to Rosewood's top clients and distributed at holiday parties;

(x)      Posted the listing to websites such as: CoStar, Crexi, Brevitas, LinkedIn, Propertyshark, GlobalCRE and Apartmentbuildings.com;

(xi)     Designed and sent email campaigns to 39,000 investors;

(xii)    Compiled market data including all recent buyers and sellers of New York City office properties and other groups of suitable buyers;

(xiii)   Placed phone calls to 2,000+ investors;

(xiv)    Shot and edited a drone/virtual property tour, narrated in English and Chinese; and

(xv)     Designed and placed ads in Real Estate Weekly and New York Real Estate Journal, the Jewish Herald, The New York Times, the Chinese World Times and NYREJ Property of the Month.

8

## IV.    SUMMARY OF THE PLAN

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INTELLIGENT JUDGMENT CONCERNING IT. THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

### A.    General Plan Objectives

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization.  Asset sales, stock sales and other liquidation efforts, however, can also be conducted during a chapter 11 case or pursuant to a chapter 11 plan.  Under chapter 11, a company endeavors to restructure its finances such that it maximizes recovery to its creditors.

Formulation of a chapter 11 plan is the primary purpose of a chapter 11 case.  A chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors with respect to their claims against the debtor.  According to Section 1125 of the Bankruptcy Code, acceptances of a chapter 11 plan may be solicited by the proponent of a plan only after a written disclosure statement has been provided to each creditor or shareholder who is entitled to vote on the plan.

The Debtor's Plan may be a plan of liquidation or a plan of reorganization depending upon which sale or investment offer the Debtor determines will ultimately maximize value for all its creditors.  For example, if the Debtor decides to proceed with the sale of the Property to the qualified bidder who submits the highest and best bid at the Auction, the Debtor will move to close on that sale transaction and liquidate its assets to provide for a recovery to its creditors. Under that scenario, the Debtor's Plan will be a plan of liquidation.  If, however, the Debtor determines that a Refinancing or Reinstatement of Wilmington Trust's Secured Claim will maximize value for all its creditors, the Debtor's Plan will be a plan of reorganization.

The Plan (i) divides claims into separate classes, (ii) specifies the property that each class is to receive under the Plan, and (iii) contains other provisions necessary to implement the Plan. Under the Bankruptcy Code, "claims" are classified rather than "creditors" because such entities may hold claims in more than one class.

### B.    Provisions Governing Order and Method for Distributions Under the Plan

The Plan divides Claims against the Debtor into four (4) categories or "Classes" according to the underlying basis and subsequent treatment for each.  Claims within the same Class are treated identically and each Class is treated differently.

Administrative Claims, Priority Tax Claims and Fee Claims are not classified but are treated in the manner set forth in Article II of the Plan and summarized below.

### C.    Classes of Claims

The following classes of Claims are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

9

| Class | Designation | Treatment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Secured Claim of Wilmington Trust | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claim of Titan Capital | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Interests | Impaired | Yes |

### 1.    *Administrative Claims*

Administrative Claims are not classified consistent with Section 1123(a)(1) of the Bankruptcy Code. Each holder of an Allowed Administrative Claim, other than holders of Fee Claims or U.S. Trustee Fees, shall be paid by the Disbursing Agent, in full, in cash, in such amounts as may be Allowed by the Bankruptcy Court or as are incurred in the ordinary course of the liquidation of the Debtor, from the proceeds of the Sale, Refinancing or other transaction (as applicable) (a) on or as soon as reasonably practicable after the later of the Effective Date or the Closing Date, as applicable, and the date on which such Claim becomes an Allowed Administrative Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Claim and the Disbursing Agent or ordered by the Bankruptcy Court.

In the event there exists any Disputed Administrative Claim on the Effective Date, the Debtor or the Disbursing Agent, as applicable, shall at all times hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Claims. Administrative Claims are not Impaired by the Plan.

Pursuant to Section 2.3 of the Plan, an Administrative Claim Bar Date is established as the first Business Day that is at least thirty (30) days after the earlier of the Closing Date or the Effective Date. The Debtor has been paying its administrative expenses in the ordinary course of business and does not have any outstanding post-petition obligations owing to creditors that have not been covered by Wilmington Trust's protective advances.

### 2.    *Priority Tax Claims*

Priority Tax Claims are not classified consistent with Section 1123(a)(1) of the Bankruptcy Code. Except as may be otherwise mutually agreed in writing between the Debtor and any applicable Governmental Units, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent as follows:

(a)    **Sale**. In the event of a sale, all Allowed Priority Tax Claims shall be paid from the proceeds remaining in the Distribution Fund, if any, as soon as is reasonably practicable after the payment in full in Cash of all of the following: (i) Administrative Claims, (ii) Fee Claims, (iii) the Class 1 Claim, and (iv) the Class 2 Claim.

(b)    **Refinancing or Reinstatement**. In the event of a Refinancing or Reinstatement of Wilmington Trust's Allowed Secured Claims, all Allowed Priority Tax Claims shall be paid in full from the proceeds received by the Debtor to implement such Refinancing or Reinstatement. Priority Tax Claims may be Impaired by the Plan subject to the amount of proceeds remaining in

10

the Distribution Fund.  The Debtor has been paying its tax liabilities in the ordinary course of business and does not have any outstanding post-petition obligations owing to any tax authorities that have not been covered by Wilmington Trust's protective advances

For the avoidance of doubt, the treatment of Priority Tax Claims that are secured by tax liens or warrants shall be treated consistent with section 1129(a)(9)(D) of the Bankruptcy Code.

### 3.    *Professional Fee Claims*

(a)    Fee Claims are not classified consistent with Section 1123(a)(1) of the Bankruptcy Code.  Each holder of an Allowed Fee Claim shall be paid in Cash in an amount equal to its Allowed Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

(b)    In the event any Disputed Fee Claims exist on the Effective Date, the Debtor or Disbursing Agent, as applicable, shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Code.  Fee Claims are not Impaired by the Plan.

(c)    The Debtor estimates that, as of the Effective Date, Professional Fee Claims will total approximately $575,000.

### 4.    *Class 1 – Wilmington Trust*

(a)    **Sale**.  In the event of a Sale, the Allowed Secured Claim of Wilmington Trust shall be paid in full in Cash from the Distribution Fund; *provided, however*, that if the value of the Property is less than the amount of the Allowed Secured Claim of Wilmington Trust, the balance of such Claim which is not secured by the Property shall be treated as a Class 3 General Unsecured Claim.

(b)    **Refinancing**.  In the event of a Refinancing, the Allowed Secured Claim of Wilmington Trust shall be paid in full in Cash from the Distribution Fund.

(c)    **Reinstatement**.  The Allowed Secured Claims of Wilmington Trust may, at the Debtor's discretion, be Reinstated pursuant to Section 1124(2) of the Bankruptcy Code.  As set forth below in section V.E., the Debtor will file a notice in the Chapter 11 Case within one day of the close of the Auction which will notify creditors of its decision to pursue a sale, a Refinancing, or a Reinstatement.

(d)    **Right to Vote**.  Class 1 is Unimpaired, and Wilmington Trust is presumed to accept the Plan and is not entitled to vote.  Wilmington Trust disputes that it is unimpaired and asserts that its treatment under the Plan renders it impaired and it should be entitled to vote.

### 5.   *Class 2 – Titan Capital*

(a)   **Sale**.  In the event of a Sale, the Allowed Secured Claim of Titan Capital shall be paid from the remaining proceeds of the Distribution Fund, if any, promptly after the payment in full in Cash of all of the following: (a) Administrative Claims, (b) Fee Claims, and (c) the Class 1 Claim, ***provided, however***, that if the value of the Property is less than the amount of the Allowed Secured Claim of Titan Capital, the balance of such Claim which is not secured by the Property shall be treated as a Class 3 General Unsecured Claim.

(b)   **Refinancing or Reinstatement**.  In the event the Debtor determines to Reinstate or Refinance the Allowed Secured Claim of Wilmington Trust pursuant to Section 3.1 of the Plan, the Allowed Secured Claim of Titan Capital shall be paid in full in Cash from the proceeds of the Distribution Fund.

(c)   **Right to Vote**.  In the event of a Sale, Class 2 is Impaired, and Titan Capital is entitled to vote.  In the event of a Refinancing or Reinstatement of the Allowed Secured Claim of Wilmington Trust, Class 2 will be Unimpaired and Titan Capital will be deemed to accept the Plan and will not be entitled to vote.

### 6.   *Class 3 – Allowed General Unsecured Claims*

(a)   **Sale**.  In the event of a Sale, each holder of an Allowed Class 3 General Unsecured Claim shall receive one or more distributions on a Pro Rata basis, up to one hundred percent (100%) of such Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim, from the remaining proceeds of the Distribution Fund, if any, promptly after the payment in full in Cash of all of the following: (a) Administrative Claims, (b) Fee Claims, (c) the Class 1 Claim, (d) the Class 2 Claim, and (e) Priority Tax Claims, with no post-Petition Date interest thereon.

(b)   **Refinancing or Reinstatement**.  In the event the Debtor determines to Reinstate or Refinance the Allowed Secured Claim of Wilmington Trust pursuant to Section 3.1 of the Plan, each Class 3 Allowed Claim shall be paid in full in Cash from the proceeds of the Distribution Fund.

(c)   **Right to Vote**.  In the event of a Sale, Class 3 is Impaired, and holders of a Class 3 Claim are entitled to vote to accept or reject the Plan.  In the event of a Refinancing or Reinstatement of the Allowed Secured Claims of Wilmington Trust, Class 3 will be Unimpaired and holders of Allowed general unsecured Claims will be deemed to accept the Plan and not be entitled to vote.

### 7.   *Class 4 – Allowed Interests*

(a)   **Sale**.  In the event of a Sale, the Debtor's Owner, as the sole holder of an Interest in the Debtor, shall receive the remaining proceeds of the Distribution Fund, if any, after the payment of all classified and unclassified Allowed Claims.

(b)   **Refinancing or Reinstatement**.  In the event the Debtor determines to Reinstate or Refinance the Allowed Secured Claim of Wilmington Trust pursuant to Section 3.1 of the

12

Plan, the Debtor's Owner shall (i) receive the remaining proceeds of the Distribution Fund, if any, after the payment of all classified and unclassified Allowed Claims in Cash from the proceeds of the Distribution Fund, and (ii) retain his Interest in the Debtor.

(c)    **Right to Vote**.  In the event of a Sale, Class 4 Interests are Impaired, and the Debtor's Owner is entitled to vote.    In the event of a Refinancing or Reinstatement of Wilmington Trust's Allowed Secured Claim, Class 4 will be Unimpaired and the Debtor's Owner will be deemed to accept the Plan and not be entitled to vote.

## V.    MEANS OF IMPLEMENTING THE PLAN

### A.    Plan Funding

As a condition to effectiveness of this Plan, the Debtor must either (i) close on the Sale of the Property or the Refinancing of the Property or (ii) Reinstate the Allowed Secured Claim of Wilmington Trust.  The Sale of the Property, if implemented, is intended to be exempt from otherwise applicable transfer taxes in accordance with Section 1146(a) of the Bankruptcy Code.

The Plan shall be funded with (a) Cash on hand and (b) the net proceeds of (i) a Sale of the Property pursuant to the Bid Procedures, (ii) the Refinancing of the Class 1 Claim or (iii) any other capital raise or other investment in the Debtor approved by the Bankruptcy Court, or any combination of the foregoing.

### B.    Sale of Property

#### 1.    *The Sale Process*

The Debtor, with the assistance of Rosewood, is running a Sale process in accordance with the Bid Procedures pursuant to Bankruptcy Code Sections 363 and 1123(a)(5), to sell the Property free and clear of any and all Liens, Claims, and encumbrances (except for Assumed Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law.

#### 2.    *Vesting of Assets*

Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall vest in the successful purchaser free and clear of all Liens, Claims and encumbrances (other than Assumed Contracts) and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds as of such date.

#### 3.    *Sale Proceeds*

The Sale Proceeds shall be used solely to fund the Distribution Fund and utilized to satisfy payments consistent with the terms of the Plan.

### 4.   *Transfer Taxes*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to the sale of the Property to the Successful Purchaser.

### C.   Refinancing

#### 1.   *The Refinancing Process*

The Debtor shall have the absolute right to satisfy the Allowed Class 1 Claim through a Refinancing, capital raise or any other means available, at any time up to the Closing of a Sale. The time period for the Debtor and/or Rosewood to identify any such transactions shall be the same Marketing Period to be implemented in connection with a Sale.

#### 2.   *The Refinancing Proceeds*

The Refinancing Proceeds shall be used to fund the Distribution Fund and utilized to satisfy payments consistent with the terms of the Plan.

### D.   Reinstatement

1.   Notwithstanding any provision contained in the Plan to the contrary, the Debtor, in its sole discretion, shall have the absolute right to utilize some or all of the proceeds of a Refinancing, capital raise or other transaction to Reinstate the Allowed Class 1 Claim, ***provided***, ***however***, that the Debtor implement such Reinstatement pursuant to Section 1124 of the Bankruptcy Code, including by (i) curing any and all monetary defaults required to be cured under Bankruptcy Code Section 1124 or, where applicable (ii) compensating the holder(s) of such claims for any actual pecuniary loss incurred by such holder as a result of any default(s).

2.   The Debtor believes it will need approximately six million dollars ($6,000,000.00) to cure existing defaults in order to properly Reinstate Wilmington Trust's Allowed Secured Claim pursuant to Bankruptcy Code Section 1124. Wilmington Trust disputes this and asserts that curing all defaults would require a payment of approximately $11.2 million ($11,200,000.00), which includes a yield maintenance premium in the amount of $5,208,873.11. The Debtor maintains that it is not required to pay the yield maintenance premium in order to cure existing defaults and the Bankruptcy Court will adjudicate this issue at the Confirmation Hearing. A listing of some of the non-monetary defaults can be found in footnote 1 in section II.C. in this Amended Disclosure Statement.

E.     **Notice of Sale, Refinancing or Reinstatement**

Within one day of the close of the Auction, the Debtor shall file a notice on the docket in the Chapter 11 Case notifying all parties whether it will proceed with a Sale, a Refinancing or a Reinstatement and will serve such notice on Wilmington Trust, Titan and all other parties who have filed Bankruptcy Rule 2002 notices of appearance. The purpose of this notice is to (i) ensure that creditors know what they are voting on and (ii) give creditors enough time to assess the Plan before they have to vote to accept or reject it.

F.     **Post-Confirmation Date Management**

*1.     Termination of the Receiver*

On the Confirmation Date, unless a Sale Closing Date shall have occurred, the Receiver shall be terminated and shall have no further duties and responsibilities other than to facilitate the transfer of management of the Property back to the Debtor.

On and after the Confirmation Date, unless a Sale Closing Date shall have occurred, the Debtor shall take over the management of the Property, and the Debtor's Owner shall not receive any compensation for his management services until such time as all classified and unclassified Claims have been paid to the extent provided for and in accordance with the Plan.

*2.     Post-Effective Date*

a.     **Sale**. In the event of a sale, the Debtor shall continue to exist after the Effective Date for the purposes of making Distributions to holders of Allowed Claims and Interests under the Plan, and to take any other steps in furtherance thereof or, if applicable, as may be reasonably necessary or appropriate to wind-down its affairs and its Estate, including filing and prosecuting objections to Claims, if any, and if necessary. The principal purpose of the Debtor shall be to (i) implement the Plan, (ii) if necessary, liquidate, collect and maximize the Cash value of the any remaining assets of the Estate, and (iii) make Distributions on account of Allowed Claims in accordance with the terms of the Plan.

b.     **Refinancing**. In the event of a Refinancing, (i) the Debtor shall continue to exist, (ii) all of the Debtor's assets, including the Property, will vest in the Debtor, (iii) the Debtor's Owner shall retain his Interest in the Debtor, and (iv) the Property will be managed by the Debtor.

c.     **Reinstatement**. In the event of a Reinstatement, (i) the Debtor shall continue to exist, (ii) all of the Debtor's assets, including the Property, will vest in the Debtor, (iii) the Debtor's Owner shall retain his Interest in the Debtor, (iv) the Property will be managed by the Debtor and (v) the Debtor shall comply in all respects with each of the terms and provisions of the Loan Documents.

d.     **U.S. Trustee Fees and Post Confirmation Reports**

The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment of all quarterly fees required under 28

15

U.S.C. § 1930 and applicable interest under 31 U.S.C. Section 3717, on behalf of the Debtor, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

### G.     Filing of Documents

Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

### H.     Resolution of Disputed Claims & Reserves

#### 1.     Claims Objection Deadline

Subject to further extension by the Debtor, objections to the allowance of any Claim may be filed no later than the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

#### 2.     Amendment of Claims

A Claim may not be amended after the Effective Date unless agreed upon in writing by the Debtor and the holder of such Claim, and, in the case of an Allowed Class 1 Claim or Allowed Class 2 Claim, Wilmington Trust and Titan Capital, respectively, and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

#### 3.     Reserve for Disputed Claims

Notwithstanding anything contained in this Plan to the contrary, the Debtor shall reserve, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of Distribution. The Cash so reserved for the holder of such Disputed Claim, shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when Distribution thereon is made to or received by such holder.

### I.     Provisions Governing Distributions

#### 1.     Disbursing Agent

The Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan, the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

### 2.    *Timing of Distributions Under the Plan*

Subject to Sections 6.6 and 6.8 of the Plan, any payments, Distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim shall be deemed to be timely made if made as provided for under the Plan on the later of the Closing Date or the Effective Date, on or within five (5) days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

### 3.    *Method of Payment*

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank, or wire transfer, if requested.

### 4.    *Prosecution of Objections*

After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtor may comprise any objections to Disputed Claims without further order of the Court.

### 5.    *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Plan.

### 6.    *Escrow of Cash Distributions*

On any date that Distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any Disputed cure amount, and (iv) any amount due but not payable on the Closing Date on account of Administrative Claims or Claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

### 7.    *Distribution After Allowance*

Subject to Article III of the Plan, within five (5) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or

other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

### 8.    *Investment of Segregated Cash*

To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; ***provided***, ***however***, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds. Segregated Cash shall be maintained in an authorized depository.

### 9.    *Uncollected Segregated Funds*

Subject to Section 6.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Estate for distribution pursuant to the terms of this Plan.

### 10.    *Delivery of Distributions*

Except as provided in Sections 6.12, 6.13 and 6.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made (1) at the addresses set forth on the respective Proofs of Claim or proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

### 11.    *Undeliverable Distributions*

(a)    If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable Distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an unclaimed distribution pursuant to Section 6.13 of the Plan.

(b)    Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section 6.13 of the Plan, within 30 days after the end of each calendar quarter following the Confirmation Date, the Disbursing Agent shall make Distributions of all Cash that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

(c)      Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

### 12.      *Unclaimed Distributions*

Any Cash or other assets to be distributed under the Plan shall revert to the Debtors and distributed in accordance with the terms of this Plan if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article III hereof; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

### 13.      *Estimation of Claims*

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.   All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 14.      *Preservation of Causes of Action*

Except as otherwise provided in the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity are preserved, including without limitation, any and all Causes of Action under Sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

## VI.   <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

### A.   <u>Rejection of Executory Contracts and Unexpired Leases</u>

On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court,

19

release or other agreement or document entered into in connection with the Plan, or (3) is a D&O policy or an insurance contract.

### B.      Assumption and Assignments of Executory Contracts and Unexpired Leases

In the event of a Sale, on the Sale Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party, if any, shall be deemed assumed and assigned to the successful purchaser in accordance with Section 365 of the Bankruptcy Code, (the "Assumed Contracts"), except for those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement, which shall be deemed rejected.

### C.      Assumption Cure Payments

In the event of a Sale, except as otherwise agreed to by the Debtor and the successful purchaser, on the Sale Closing Date, the successful purchaser shall cure any and all undisputed defaults under any Assumed Contracts.  Unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (ii) the Sale Closing Date.

### D.      Rejection Claims

Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as an General Unsecured Claim.

### E.      Bar to Rejection Claims

A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Sale Closing Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor's Estate, its successors or its properties.

## VII.    INJUNCTION AND EXCULPATION

### A.      Binding Effect

On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtors, whether or not such holders accept the Plan.

B.    **Injunction**

Except (i) as otherwise provided under a Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin, with respect to any Claim held against the Debtor's Estate as of the date of entry of the Confirmation Order, (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (b) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Property, or from property of the Estate, any Claim, obligation or debt that was held against the Property or from property of the Estate by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan.   The entry of the Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.  For the avoidance of doubt, this injunction shall not apply to Wilmington Trust in any suit, action, or other proceeding to collect upon any guaranty related to the Property.

C.    **Exculpation**

To the extent permitted under 11 U.S.C. § 1125(e), neither the Debtor nor any of its members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Amended Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan and any related agreement except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.  Notwithstanding any other provision in the Plan, nothing in Sections 8.2 or 8.3 of the Plan shall (a) effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 8.2 or 8.3 of the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state

21

and local authority whatsoever, including liabilities arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any Claim of Wilmington Trust or any of its affiliates, including, without limitation, any Claim arising out of or under any guarantees executed in connection with the Class 1 Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections 8.2 or 8.3 of the Plan enjoin Wilmington Trust from bringing any Claim, suit or action or other proceeding under or arising out of the Guarantees or any environmental law, or (c) limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

### D.    All Distributions Received in Full and Final Satisfaction

Except as otherwise set forth in the Plan, all Distributions to be made in accordance with the Plan on account of Claims, and all rights conferred under the Plan shall be received in full and final satisfaction of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

## VIII.    CONDITIONS PRECEDENT

### A.    Conditions Precedent to Confirmation of the Plan

The following conditions must be satisfied, or otherwise waived in accordance with the terms of the Plan, on or before the Confirmation Date:

1.    The Disclosure Statement Approval Order shall have been entered and shall have become a Final Order; and

2.    The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor, Wilmington Trust, Titan and the U.S. Trustee's Office, and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; and (iv) establish the Administrative Claim Bar Date.

### B.    Conditions Precedent to the Plan Effective Date

The Effective Date shall not occur and no obligations under the Plan shall come into existence unless each of the following conditions is met or, alternatively, is waived in accordance with the terms of the Plan, on or before the Effective Date:

1.    The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan;

2.    The Confirmation Order shall be in full force and effect and not subject to any stay, modification or injunction;

3.      Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions;

4.      All documents and agreements necessary to implement the Plan, will have (a) been tendered for delivery and (b) been effected or executed by all entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

5.      All conditions to the effectiveness of the Sale Contract or Credit Bid Agreement, as applicable, shall have been satisfied.

## IX.    **RETENTION OF JURISDICTION**

### A.      **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Chapter 11 Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

1.      Ensure that the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

2.      Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

3.      Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

4.      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

5.      Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

6.      Ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

7.    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

8.    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Amended Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

9.    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan;

10.    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Amended Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Amended Disclosure Statement;

11.    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Amended Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

12.    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, including the Confirmation Order or any other order of the Bankruptcy Court;

13.    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Amended Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Amended Disclosure Statement;

16.    To adjudicate any disputes related to the Confirmation Order, the Sale or alternatively, any auction and sale process as well as disputes relating to the Bid Procedures; and

17.    Enter a Final Order or decree concluding the Chapter 11 Case.

### B.    Post-Effective Date Jurisdiction

Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## X.    CERTAIN TAX CONSEQUENCES OF THE PLAN

### A.    General

**THE DESCRIPTION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN PROVIDED BELOW IS LIMITED TO THE SPECIFIC FEDERAL INCOME TAX MATTERS DESCRIBED HEREIN.  IT IS POSSIBLE THAT ADDITIONAL ISSUES MAY EXIST THAT COULD AFFECT THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN OR OTHER FEDERAL INCOME TAX MATTERS DISCUSSED HEREIN AND THIS DISCUSSION DOES NOT CONSIDER OR PROVIDE ANY CONCLUSIONS WITH RESPECT TO ANY SUCH ADDITIONAL ISSUES.  EACH TAXPAYER IS STRONGLY URGED TO SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM SUCH TAXPAYER'S INDEPENDENT TAX ADVISOR.**

**THE DESCRIPTION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN PROVIDED BELOW IS SOLELY FOR THE PURPOSE OF COMPLIANCE WITH SECTION 1125(a) OF THE BANKRUPTCY CODE.  THE DESCRIPTION IS BASED ON THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "INTERNAL REVENUE CODE") TREASURY REGULATIONS, JUDICIAL DECISIONS AND ADMINISTRATIVE DETERMINATIONS, ALL AS IN EFFECT ON THE DATE OF THIS AMENDED DISCLOSURE STATEMENT.  CHANGES IN ANY OF THESE AUTHORITIES OR IN THEIR INTERPRETATION MAY HAVE RETROACTIVE EFFECT, WHICH MAY CAUSE THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO DIFFER MATERIALLY FROM THE CONSEQUENCES DESCRIBED BELOW.  NO RULING HAS BEEN REQUESTED FORM THE INTERNAL REVENUE SERVICE (THE "IRS") AND NO LEGAL OPINION HAS BEEN REQUESTED FROM COUNSEL CONCERNING ANY TAX CONSEQUENCE OF THE PLAN, AND NO TAX OPINION OR ADVICE IS GIVEN BY THIS AMENDED DISCLOSURE STATEMENT.**

This description does not cover all aspects of federal income taxation that may be relevant to the Debtor or holders of Claims.  For example, the description does not address issues of special concern to certain types of taxpayers, such as dealers in securities, life insurance companies, financial institutions, tax exempt organizations and foreign taxpayers, nor is it intended to address all of the possible federal income tax consequences to holders of Claims against the Debtor.  This description also does not discuss the possible state tax or non-U.S. tax consequences that might apply to the Debtor or to holders of Claims.

B.    **Tax Consequences of Payment of Allowed**
      **Claims Pursuant to Plan Generally**

The federal income tax consequences of the implementation of the Plan to the holders of Allowed Claims will depend, among other things, on the consideration to be received by the holder, whether the holder reports income on the accrual or cash method, whether the holder's Claim is Allowed or Disputed on the Effective Date, and whether the holder has taken a bad debt deduction or a worthless security deduction with respect to its Claim.  All holders of Claims are urged to consult with their tax advisors concerning the tax consequences applicable under the Plan.  Nothing contained herein shall be relied upon as tax advice.

*1.    Recognition of Gain or Loss*

In general, a holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the holder's tax basis in the Claim.  Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount or premium.  If the holder realizes a capital loss, the holder's deduction of the loss may be subject to limitation.  The holder's tax basis for any property received under the Plan generally will equal the amount realized.

*2.    Bad Debt or Worthless Security Deduction*

A holder who receives in respect of an Allowed Claim an amount less than the holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under section 166 of the Internal Revenue Code.  The rules governing the availability, character, timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claims.  holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

*3.    Receipt of Interest*

The Plan does not address the allocation of the aggregate consideration to be distributed to holders between principal and interest and the Debtor cannot make any representations as to how the IRS will address the allocation of consideration under the Plan.  In general, to the extent that any amount of consideration received by a holder is treated as received in satisfaction of unpaid interest that accrued during such holder's holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income and not otherwise exempt from U.S. federal income tax).  Conversely, a holder may be allowed a bad debt deduction to the extent any accrued interest was previously included in its gross income but subsequently not paid in full.  However, the IRS may take the position that any such loss much be characterized based on the character of the underlying obligation, such that the loss will be a capital loss if the underlying obligation is capital asset.  Again, holders of Allowed Claims should address all potential tax implications with their own tax advisors.

## XI.   MISCELLANEOUS PLAN PROVISIONS

### A.   Orders in Aid of Consummation

Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

### B.   Compliance with Tax Requirements

In connection with the Plan, the Debtor and/or the Receiver, where applicable, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and Distributions under the Plan shall be subject to such withholding and reporting requirements; *provided*, *however*, that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

### C.   Due Authorization by Claim Holders

Each and every holder of a classified and/or unclassified Claim who accepts the Distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the Distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Claim holder under the Plan.

### D.   Amendments

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, and (ii) after entry of the Confirmation Order, in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case, without additional disclosure pursuant to Section 1125 of the Bankruptcy Code.

In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, prior to the Effective Date, the Debtor may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### E.   Reservation of Rights

Neither the filing of the Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither the Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

27

### F.    Revocation or Withdrawal of Plan

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor; (ii) prejudice in any manner the rights of the Debtor; or (iii) constitute an admission of any sort by the Debtor.

### G.    Request for Relief Under Section 1129(b)

If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### H.    Additional Documents

Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, the Plan Supplement.   The Debtor and all holders of Claims receiving Distributions pursuant to the Plan, and all other parties in interest, shall, prepare, execute, and deliver an agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### I.    Section Headings

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

### J.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### K.    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

L.    **Notices**

All notices, requests, demands and other communications to be given or made hereunder, to be effective, shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the Debtor, at Herrick, Feinstein, LLP, 2 Park Avenue, New York, NY 10016, Attention: Steven B. Smith, Esq.;

2.    if to Wilmington Trust, at Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 1036, Attention: Gary Eisenberg, Esq.;

3.    if to any Claim holder, at (i) the addresses set forth on the Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address; and

4.    if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

M.    **Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

N.    **Severability**

In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

O.    **Business Day**

In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## XII.    CONFIRMATION OF PLAN – REQUIREMENTS

In Order for the Plan to be confirmed, the Bankruptcy Code requires, among other things, that the Plan be proposed in good faith, that the Debtor disclose specified information concerning payments made or promised to insiders, and that the Plan comply with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129(a) of the Bankruptcy Code also requires that at least one Class of Claims has accepted the Plan ("Minimum Voting Threshold"), that

29

Confirmation of the Plan is not likely to be followed by the need for further financial reorganization, and that the Plan be fair and equitable with respect to each Class of Claims that is impaired under the Plan. The Bankruptcy Court can confirm the Plan if it finds that all of the requirements of section 1129(a) have been met. The Debtor believes that the Plan meets all of these required elements. With respect to the so-called "feasibility" test (*i.e.*, that the Plan is not likely to be followed by the need for further financial reorganization), the Plan maximizes the value of the Estate and the Debtor believes that it will be able to consummate the Plan fully.

In the event that a Class of Claims votes to reject the Plan, the Plan does not satisfy all of the requirements of Section 1129(a) of the Bankruptcy Code. Although the Minimum Voting Threshold is not met, the Bankruptcy Court nevertheless may confirm the Plan under the "cram down" provisions of Section 1129(b) of the Bankruptcy Code if all of the other provisions of Section 1129(a) of the Bankruptcy Code are met. Thus, the Debtor presently intends, to the extent necessary, (i) to undertake to have the Bankruptcy Court confirm the Plan under the "cram down" provisions of Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan to the extent necessary to obtain entry of the Confirmation Order.

In order to confirm a plan over the dissenting vote of an impaired Class under Section 1129(b) of the Bankruptcy Code that satisfies the remaining provisions of Section 1129(a) of the Bankruptcy Code, the Bankruptcy Court, on request of the proponent of a plan, "shall" confirm the Plan if the Plan does not discriminate unfairly, and is fair and equitable with respect to each Class of Claims that is impaired under, and has not accepted, the Plan. For purposes of Section 1129(b) of the Bankruptcy Code, a Plan is "fair and equitable" with respect to a class of unsecured creditors if, at a minimum, it satisfies the "absolute priority rule" and the "best interests of creditors test."

**A.**    **Absolute Priority Rule**

To satisfy the absolute priority rule, the Plan must provide that the holder of any Claim that is junior to the Claims of the dissenting Class will not receive or retain under the Plan on account of such junior Claim any property unless the Claims of the dissenting Class are paid in full.

The Debtor believes that the Plan satisfies the absolute priority rule. The Debtor further believes that all non-accepting impaired Classes will receive or retain payment or Distribution, as the case may be, on account of their Claims, sufficient to permit full satisfaction of such Claims before junior Classes receive or retain any property on account of such junior Claims.

**B.**    **Best Interest of Creditors Test; Liquidation Analysis**

Notwithstanding acceptance of the Plan by a voting Class of creditors, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Voting class which has not voted to accept the Plan. Accordingly, if a voting class does not vote unanimously to accept the Plan, the best interests test under section 1129(a)(7) of the Bankruptcy Code requires the Bankruptcy Court to find that the Plan provides to each member of such voting Class a recover on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the

recovery that each such Class member would receive if the Debtor was liquidated under chapter 7.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

Here, the Debtor believes that the Plan satisfies the best interests test, because, among other things, the recoveries expected to be available to holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available through a chapter 7 liquidation. The primary advantages of the Plan over a chapter 7 liquidation are as follows:

(i)  ***A Refinancing or Reinstatement Will Provide***
     ***<u>Greater Recoveries Than a Chapter 7 Liquidation</u>***

Pursuing the Plan within chapter 11 affords the Debtor the opportunity to identify transactions other than just a sale, such as a Refinancing or Reinstatement. Under chapter 7, however, a trustee can only consider the sale option. For the following reasons, the Refinancing and Reinstatement options will provide greater recoveries than a chapter 7 liquidation:

(a)  **The Sale**. In a chapter 7 liquidation, the full amount of Wilmington Trust's claim – north of $34 million – would have to get paid first, before any other claim could receive any distribution. Based on the presentations and projections the Debtor received from several real estate brokers it interviewed before deciding to retain Rosewood, the Debtor was advised that a sale of the Property in its current near-vacant state could yield a sale price of anywhere between $27 million to $28 million.[2] Under that valuation, the only creditor who will receive any recovery will be Wilmington Trust; Titan and all other unsecured creditors *will receive no recovery*.

(b)  **Refinancing**. Under a Refinancing, (1) Wilmington Trust's Allowed Claim will be paid in full, (2) Titan's Allowed Claim will be paid in full, (3) the Allowed Claims of all unsecured creditors will be paid in full, and (4) the Debtor's assets, including the Property, would vest in the Debtor.

---

[2] See *Declaration Of Gary Tse In Support Of Objection Of C.T.W. Realty Corp. To Motion To Terminate Debtor's Exclusive Period Under Section 11. U.S.C. § 1121* which is attached as Exhibit A to the *Objection Of C.T.W. Realty Corp. To The Motion Of Wilmington Trust, N.A. To Terminate Exclusive Period Of Debtor Pursuant To 11 U.S.C. § 1121(d)(1)*, dated July 16, 2019, and can be found on the Docket in the Chapter 11 Case at Docket No. 34.

(c)    **Reinstatement**.  Under a Reinstatement, (1) Wilmington Trust's Allowed Secured Claim will be Reinstated, (2) Titan's Allowed Claim will be paid in full, (3) the Allowed Claims of unsecured creditors will be paid in full and (4) the Debtor's assets, including the Property, would vest in the Debtor.

Thus, because the Debtor's ability to pursue a Refinancing or a Reinstatement of Wilmington Trust's Allowed Secured Claim will be lost in the event of a conversion to chapter 7, creditors stand to receive greater recoveries under the Plan than through a chapter 7 liquidation.

(ii)    *A Sale Pursuant to the Plan Will Provide*
        *Greater Recoveries Than a Chapter 7 Liquidation*

Pursuing the sale of the Property as proposed in the Plan will provide far greater recoveries than pursuing the sale of the Property through a chapter 7 liquidation for the following reasons:

(a)    The Retention of Rosewood Realty Group

The Debtor has retained Rosewood, a leading real estate broker with significant experience and expertise in marketing and selling properties similar to the Property in this case, to conduct the Marketing Period with respect to the Property in order to solicit bids to purchase the Property pursuant to the Bid Procedures.  In fact, Rosewood has been ranked the number one single office investment sales firm in New York City in transaction volume from 2007 to 2019, and the firm has reached over \$3.2 Billion in sales per year and its principals have sold over 3,000 buildings.  And Rosewood has advised the Debtor that a sale of the Property pursuant to the Debtor's Plan would be a better way to maximize the return for creditors as opposed to a sale under chapter 7.

(b)    The Chapter 11 Transfer Tax Exemption

Section 1146(a) of the Bankruptcy Code allows debtors, *in chapter 11 only*, to avoid paying stamp taxes or similar taxes on assets transferred pursuant to a confirmed chapter 11 plan of reorganization.  In a chapter 7 case, however, there is no such transfer tax exemption. Rosewood has advised the Debtor that the transfer tax savings in this case will be approximately 2.8% if the sale closes after confirmation of the Plan in chapter 11.

(c)    Additional Costs and Delay

*First*, liquidating the Debtor's estate under chapter 7 would likely provide a smaller distribution to creditors because of the fees and expenses which would be incurred during a chapter 7 liquidation.  Rosewood has advised the Debtor that (a) the typical chapter 7 trustee fee would be about 3% of the amount disbursed, assuming that there is any distribution to unsecured creditors, and (b) there would also be an additional layer of expenses if the case were converted to chapter 7 as a trustee would have to retain his or her own counsel and accountants in order to carry out the trustee's duties and responsibilities.

***Second***, in addition to increased fees and expenses, liquidating the Debtor's estate under chapter 7 *will* result in significant delay considering (a) Rosewood has already commenced its effort to market the Property and (b) a chapter 7 trustee will have to retain its own professionals who will need time to familiarize themselves with the Chapter 11 Case.

***Third***, Rosewood has advised the Debtor that the bottom line difference in costs and savings between a sale under the Debtor's chapter 11 Plan and a chapter 7 liquidation sale could be as high as $1.5 million to $2.5 million.  That would be in addition to the fees and expenses associated with the delays that would inevitably result if the case were converted to chapter 7.

Thus, in light of the foregoing, the Debtor believes the Plan satisfies the "best interests of creditors test," and, indeed, that the Plan is in the best interest of creditors.

## XIII.    PLAN RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Certain Bankruptcy-Related Considerations

#### *1.    Parties in Interest May Object to the Debtor's Classification of Claims*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in such class.  The Debtor believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code.  However, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### *2.    Risk of Plan Not Being Confirmed*

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  There can also be no assurance that modifications of the Plan will not be required for Confirmation, that any negotiations regarding such modifications would not adversely affect the holders of the Allowed Claims or that any such modifications would not necessitate the re-solicitation of votes.

#### *3.    Nonconsensual Confirmation*

As set forth above, in the event any impaired class of claims does not accept a plan, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the acceptance of any "insider" in such class) and, as to each impaired class which has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to non-accepting impaired classes.

In the event that any Impaired Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to seek nonconsensual confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code.

4.      *Risks that Conditions to Effectiveness Will Not Be Satisfied*

Article XI of the Plan contains certain conditions precedent to the effectiveness of the Plan. There can be no assurances that the conditions contained in Article XI will be satisfied.

5.      *Claims Objections/Reconciliation Process*

The Debtor reserves the right to object to the amount of any Claim, except as provided in the Plan. The estimates set forth herein cannot be relied on by any holder of a Claim whose Claim is subject to an objection. Any such holder of a Claim may not receive its specified share of the estimated distributions described in the Disclosure Statement.

## B.      <u>Alternatives to the Plan and Consequences of Rejection</u>

Among the possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan are the following: (i) Wilmington Trust is likely to file its own plan focusing exclusively on the sale of the Property, and excluding Refinancing and Reinstatement; or (ii) the Chapter 11 Case could be converted to a liquidation case under chapter 7 of the Bankruptcy Code.

1.      *Alternative Plan*

a.      With respect to an alternative plan, the Debtor has explored various alternative scenarios and believes that the Plan enables the holders of Claims to realize the maximum recovery under the circumstances. The Debtor believes that the Plan is the best plan that can be proposed and serves the best interests of the Debtor and other parties-in-interest.

b.      Wilmington Trust believes that it can propose a plan that will provide greater value to creditors. The Debtor disputes this assertion because the plan that Wilmington Trust has indicated it intends to file would simply cut out the Debtor's right to seek a Refinancing or Reinstatement, and "piggy-back" on the Sale process the Debtor has already proposed in its Plan. If the Debtor can successfully Reinstate Wilmington Trust's Allowed Claim, holders of Allowed unsecured Claims will receive a 100% recovery on account of their claims. Thus, the Debtor believes that its Plan, which preserves Reinstatement, preserves the Debtor's optionality and will maximize value for all creditors.

2.      *Chapter 7 Liquidation*

As discussed above in Section XII(B), the Debtor believes that the Plan satisfies the best interests test, because, among other things, the recoveries expected to be available to holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available through a chapter 7 liquidation.

## XIV.   <u>PROCEDURES FOR VOTING ON PLAN</u>

As noted above, pursuant to the Bankruptcy Code, a plan groups various claims into classes, each consisting of parties having similar legal rights in relation to a debtor. Each class may then be treated as either "impaired" or "unimpaired" under a plan. There are three ways in

which a plan may leave a claim or interest "unimpaired." First, a plan may not propose to alter the legal, equitable or contractual rights of the holder of the claim or interest. Second, all defaults (excluding those covered by Section 365(b)(2) of the Bankruptcy Code) may be cured and the original terms of the obligation reinstated. Third, a plan may provide for the payment in full of the obligation to the holder of the claim or interest. If a class is unimpaired, then it is conclusively presumed to vote in favor of a plan.

An Impaired Class that would receive nothing under a plan is deemed to have rejected such a plan.

An Impaired Class that is proposed to receive any Distribution has the right to vote, as a class, to accept or reject the plan. A Class of creditors accepts a plan if more than one-half (1/2) of the ballots that are timely received form members of such Class, representing at least two-thirds (2/3) of the dollar amount of Claims for which ballots are timely received, vote in favor of such plan. Section 1126(e) of the Bankruptcy Code provides that a creditor's vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the creditor's vote either to accept or reject a plan was not solicited or case in good faith, or in compliance with the Bankruptcy Code. A plan under which any Class of Claims is Impaired may be confirmed by the Bankruptcy Court only if it has been accepted by at least one such Class.

Each holder of an Allowed Claim in an Impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and shall indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

Holders of Claims in an Impaired Class entitled to vote will receive, together with this Amended Disclosure Statement, a Ballot to be used in voting to accept or reject the Plan. Voting instructions will accompany the Ballot.

Each creditor should first carefully review this Amended Disclosure Statement and the Plan. The Creditor should then complete the portions of the Ballot indicating the Class or Classes in which the creditor's Claim falls and the total dollar amount of the Claim. If the creditor's Claim falls into more than one Class, then the creditor should list each Class and state the dollar amount of the Claims which belongs to each Class. It is critical that the Class(es) and amounts of the Claim be correct stated on the Ballot, so that the creditor's vote can be properly counted.

Next, the creditor should mark in the space provided on the Ballot whether the creditor wishes to accept or to reject the Plan. Please be sure to fill in the name of the creditor for whom the Ballot is being filed. Finally, the Ballot must be signed by the creditor, or by an officer, partner, or other authorized agent of the creditor. Please note that the Debtor reserves the right to object to the allowance, designation of Class and/or allowable amount of any Claim set forth in a Ballot for purposes of voting and/or Distribution under the Plan.

Completed and signed Ballots should be returned by first class mail to the Debtor's counsel at the below address in the enclosed self-addressed return envelope:

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Attention: Larisa Poretsky

Completed Ballots should be returned as soon as possible, and, in any event so that they are RECEIVED NO LATER THAN FEBRUARY 4, 2020 AT 4:00 P.M.  ANY BALLOTS WHICH ARE RECEIVED BY THE DEBTOR AFTER THIS DEADLINE SHALL NOT BE COUNTED IN DETERMINING ACCEPTANCE OR REJECTION OF THE PLAN.

## XV.    CONFIRMATION HEARING

The Confirmation Hearing will be held by the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge, on **February 13, 2020 at 10:00 a.m.**, in the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, NY 10004.  At that hearing, the Bankruptcy Court will decide whether the Plan should be confirmed and will hear and decide any and all objections to the Plan.  Any creditor, or other party in interest who wishes to object to Confirmation of the Plan, or to the classification of Claims provided in the Plan, must, not later than **4:00 p.m. on February 6, 2020**, file an objection with the Clerk of the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York, 10004, and serve a copy of the objection on the following persons: (i) The Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attention: Mr. Benjamin J. Higgins, Esq.; (ii) counsel to the Debtor: Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016, Attention: Steven B. Smith, Esq.; (iii) counsel to Wilmington Trust: Perkins Coie LLP, 1155 Avenue of the Americas, New York, NY 10036, Attention: Gary F. Eisenberg, Esq.

Any objections to the Plan which are not filed and served by the above date may not be considered by the Bankruptcy Court.  Any person or entity who files an objection to Confirmation of the Plan or to the classification of Claims provided in the Plan must also attend the Confirmation Hearing, either in person or through counsel.

If the Plan if confirmed, its provisions will bind the Estate and any and all Persons, including all holders of Claims, whether or not the Claim of such holder is impaired under the Plan and whether or not the holder has, either individually or by a Class, voted to accept the Plan.

## XVI.    RECOMMENDATION

The Debtor believes that the Plan provides for the fair and equitable treatment of the Debtor's creditors and therefore recommends that creditors vote to accept the Plan.

C.T.W. REALTY CORP.

By: _____

    Gary M. Tse, Managing Member

HERRICK, FEINSTEIN LLP

By: /s/ Steven B. Smith
    Steven B. Smith
    Meaghan Millan
    2 Park Avenue
    New York, New York 10016
    Tel: 212.592.1400
    Fax: 212.592.1500
    Email: ssmith@herrick.com
    Email: mmillan@herrick.com

    *Attorneys for the Debtor*